CLARK v. WAL-MART

[163 N.C. App. 686 (2004)]

———

SANDRA J. CLARK, EMPLOYEE, PLAINTIFF v. WAL-MART, EMPLOYER, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, CARRIER, DEFENDANTS

No. COA03-435

(Filed 20 April 2004)

**1. Workers' Compensation— alternative employment—capacity to work**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee was incapable of work in any employment, because the finding was supported by competent evidence based on a doctor's testimony.

CLARK v. WAL-MART

[163 N.C. App. 686 (2004)]

**2. Workers' Compensation— presumption of ongoing disability—shifting burden of proof—ability to earn pre-injury wages**

The Industrial Commission did not err in a workers' compensation case by giving plaintiff employee the benefit of the presumption of ongoing disability and shifting the burden to defendants to prove plaintiff's ability to earn pre-injury wages, because: (1) notwithstanding whether a form agreement was filed in this case, there was sufficient evidence that defendants stipulated to the compensability of the claim and had been paying ongoing benefits since the time of the injury; and (2) that evidence, along with a doctor's testimony concerning plaintiff's inability to return to work, was sufficient to support a finding of plaintiff's ongoing disability.

**3. Workers' Compensation— permanent disability—total disability—incapacity to earn pre-injury wages**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee suffered permanent and total disability as a result of her back injury, because: (1) the findings demonstrated that the injury caused plaintiff's incapacity to earn pre-injury wages in any employment; (2) defendants did not present any evidence that employment opportunities exist for plaintiff which she has not explored given her age, education, physical limitations, vocational skills, and experience; (3) the doctor's opinion that plaintiff would not be able to return to work and his reservation of plaintiff's ability to perform a sedentary job with no lifting requirements show her incapacity to earn any wages on a permanent basis; and (4) contrary to defendants' assertion, a finding of maximum medical improvement is not a prerequisite for an award of benefits under N.C.G.S. § 97-29.

**4. Workers' Compensation— failure to authorize ordered bone scan**

The Industrial Commission did not err in a workers' compensation case by concluding that defendants failed to authorize plaintiff employee's bone scan after being so ordered.

Appeal by defendants from opinion and award filed 31 January 2002 and from order filed 21 November 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 January 2004.

*Crumley and Associates, PC, by Daniel L. Deuterman and Amy S. Berry, for plaintiff-appellee.*

*Young Moore and Henderson, P.A., by J.D. Prather and Jennifer Terry Gottsegen, for defendant-appellees.*

BRYANT, Judge.

Wal-Mart Stores, Inc. and Insurance Company of the State of Pennsylvania (collectively defendants) appeal an opinion and award filed 31 January 2002 by the Full Commission of the North Carolina Industrial Commission (the Commission) awarding Sandra J. Clark (plaintiff) ongoing permanent and total disability compensation pursuant to N.C. Gen. Stat. § 97-29, and an order filed 21 November 2002 denying defendants' motion for reconsideration.

On 22 December 1999, plaintiff filed an amended claim for workers' compensation based on work-related injuries to her back on 21 December 1998. Defendants admitted compensability of the injury on a Form 33R but disputed the permanent nature of the injury. This matter came for hearing on 21 March 2000 before Deputy Commissioner Kim L. Cramer. By order filed 29 December 2000, the deputy commissioner concluded plaintiff was permanently and totally disabled as a result of the back injury, and awarded plaintiff ongoing benefits. Defendants appealed the order to the Full Commission (Commission).

This matter came for hearing before the Commission on 24 August 2001. By order filed 31 January 2002, the Commission preliminarily noted:

Following oral arguments before the Full Commission, at the request of defendants the parties were allowed 15 days in which to schedule a bone scan for plaintiff. By letter dated September 17, 2001 plaintiff informed the Commission that the bone scan scheduled for September 11, 2001 was cancelled because defendants failed to authorize the scan. Defendants have not explained this failure to authorize the scan or requested an extension of time within which to complete the scan. Therefore, by [o]rder dated September 28, 2001 the Full Commission closed the record and informed the parties that the Full Commission would proceed to decide the case based upon the evidence in the record.

The Commission also noted the parties' stipulation that defendants had paid plaintiff temporary total disability since the date of the injury. The Commission made these relevant findings of fact:

1. On the date of the hearing before the Deputy Commissioner, plaintiff was 66 years of age. . . .

. . . .

7. On July 16, 1998 plaintiff began working for Wal-Mart Stores as a door greeter. . . .

. . . .

13. On December 21, 1998 plaintiff was helping to straighten merchandise on store shelves. She was asked to move a "sled" that was used for displays during the holidays. The sled was on the top shelves and plaintiff had to use a ladder to get to it. When she moved the sled, plaintiff found that it was heavy and weighed over 20 pounds. As she moved the sled, plaintiff felt a sharp pain in her lower back.

14. Plaintiff went to Prime Care on December 26, 1998, seeking treatment for her back. She was initially taken out of work for two days. When plaintiff returned to the clinic with continued pain complaints on December 28, 1998, she was continued out of work through December 31, 1998. Although she was tentatively released to return to work with restrictions in early January 1999, on January 19, 1999 plaintiff was taken out of work pending an orthopaedic evaluation.

15. Plaintiff . . . saw [Dr. Charles Taft, an orthopaedic specialist] for her back complaints on March 24, 1999. . . . He assessed new compression fractures at L1 and L2, which were caused or aggravated by the incident of moving the sled on December 21, 1998.

16. In assessing plaintiff's condition, Dr. Taft . . . stated his opinion that he did not believe plaintiff would be able to return to work due to her osteoporosis and the compression fractures. The compression fractures should have healed within 8 months, but the healing process has been slowed by . . . plaintiff's smoking habit of one pack per day. Smoking decreases the oxygen flow in the blood and slows the healing of the bone.

17. Plaintiff was also examined by Dr. Frank J. Rowan, an orthopaedic specialist, whom defendants hired to conduct an independent medical examination. Dr. Rowan saw plaintiff on August 10, 1999. Dr. Rowan agreed with Dr. Taft's assessment. As both physicians testified, plaintiff had pre-existing osteoporosis,

which made her more susceptible to compression fractures in her spine. The compression fractures at L1 and L2 were caused or significantly aggravated by plaintiff's accident of December 21, 1998.

18. Dr. Rowan also agreed with Dr. Taft's assessment that plaintiff's smoking interferes with the healing of the compression fractures. . . . Although the compression fractures should have healed at the time of his examination, Dr. Rowan could not tell whether that was the case without a current bone scan, which he recommended.

19. Both Dr. Taft and Dr. Rowan have emphasized the importance of ongoing treatment of plaintiff's osteoporosis. However, this was a pre-existing condition which was not caused or aggravated by plaintiff's employment with Wal-Mart. Ongoing medical treatment for plaintiff's osteoporosis was not necessitated by plaintiff's work-related injur[y] of . . . December 21, 1998.

20. Ongoing treatment for plaintiff's osteoporosis would include use of Fosamax or Miacalcin. Neither has a primary purpose of pain treatment, although there are indications that Miacalcin mitigates the pain of compression fractures secondary to osteoporosis. These medications aid in adding calcium to the bone and in preventing future compression fractures.

21. As both Dr. Taft and Dr. Rowan have testified, the primary limiting factor in plaintiff's ability to return to any type of employment is her osteoporosis, not the compression fractures. However, the compression fractures are also a contributing factor in plaintiff's disability.

22. Both Dr. Taft and Dr. Rowan have stated their opinions that plaintiff might be able to perform a sedentary job with no lifting requirements, although Dr. Taft is not optimistic about such possibilities. . . . Any job which would require lifting would put plaintiff at risk for further injury to her back.

. . . .

28. Although the osteoporosis is the primary limiting factor in plaintiff's ability to return to gainful employment, the compression fractures are also a significant contributing factor, especially with regard to any pain that may be produced.

29. . . . Given plaintiff's age and lack of education and experience, and considering her other physical limitations, neither

pursuit of further employment opportunities nor retraining appear to be reasonable or viable options. Due to the combination of her osteoporosis and fractures, plaintiff will be very limited in anything she can do, especially lifting, and would be restricted to a sedentary position. Even then, it does not appear that plaintiff could work a full 6 to 8-hour day.

30. At the time of the hearing before the Deputy Commissioner, plaintiff was receiving ongoing benefits for total disability. Defendants have failed to present evidence that plaintiff is capable of earning wages in the same or any other employment, or that vocational retraining is viable.

The Commission concluded:

2. On December 21, 1998, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant Wal-Mart, as a result of which she sustained an injury to her back, compression fractures at L1 and L2. . . .

3. . . . Because defendants failed to schedule a bone scan as ordered by the Commission, the Full Commission cannot determine at this time whether the compression fractures at L1 and L2 have healed. Therefore, defendants shall be responsible for ongoing medical treatment for plaintiff's back condition. The prudent medical treatment includes medication which primarily treats the osteoporosis but also mitigates the pain associated with compression fractures . . . .

4. As a result of her back injury of December 21, 1998, compounded on her pre-existing osteoporosis of her spine, plaintiff had been and remains incapable of earning wages in the same or any other employment. As plaintiff has been receiving ongoing benefits, the burden is on defendants to show that she is capable of returning to gainful employment. The greater weight of the evidence shows that it is unlikely . . . plaintiff will ever be able to return to gainful employment and that she is totally and permanently disabled. Plaintiff is entitled to ongoing benefits for total and permanent disability [pursuant to] N.C. Gen. Stat. §97-29.

The Commission awarded plaintiff ongoing benefits and ordered defendants to pay all medical expenses associated with the treatment of plaintiff's back condition.

CLARK v. WAL-MART

[163 N.C. App. 686 (2004)]

The issues are whether the Commission erred in: (I) finding plaintiff incapable of work in any employment; (II) concluding plaintiff suffered permanent and total disability; and (III) concluding defendants failed to authorize plaintiff's bone scan after being so ordered.

I

[1] Defendants first argue the Commission's finding of plaintiff's incapacity to work in any employment is not supported by the evidence. In support of their argument, defendants point to Dr. Rowan's testimony that plaintiff would be able to work in a sedentary job with frequent changes in position and without significant lifting.

"If supported by competent evidence, the Commission's findings are binding on appeal[,] even when there exists evidence[] to support findings to the contrary." *Ward v. Long Beach Volunteer Rescue Squad,* 151 N.C. App. 717, 720, 568 S.E.2d 626, 628, *disc. review denied,* 356 N.C. 314, 571 S.E.2d 219 (2002). Here, Dr. Charles Taft, an orthopaedic specialist, opined plaintiff would not be able to return to work because of her osteoporosis and compression fractures, and he was not optimistic of plaintiff's ability to perform a sedentary job with no lifting requirements. In his medical notes of 1 April 1999, Dr. Taft entered: "[Plaintiff] is not going to be able to return to work at Wal[-M]art and I don't think that with her osteoporosis and multiple compression fractures, that she is going to be able to be gainfully employed." On 6 June 2000, Dr. Taft testified he was not optimistic of plaintiff's ability to resume the greeter position, which involves "continuous standing" and "frequent walking" but "no lifting," and earn wages in general. Further, Dr. Taft testified plaintiff would be "at great risk of reinjuring herself if she [were] to go back . . . to work that would involve . . . lifting." The Commission's finding of plaintiff's incapacity to work in any employment is supported by competent evidence based on Dr. Taft's testimony.

[2] Defendants also argue that the Commission erred by giving plaintiff the benefit of the presumption of ongoing disability, even though a form agreement (e.g. Form 21) was not entered in this case. Specifically, defendants argue the Commission incorrectly shifted the burden to defendants to rebut the presumption of ongoing disability without first requiring plaintiff to prove the existence and degree of her disability. We find defendants' argument is without merit.

On the Form 33R filed by defendants, they specifically admitted the compensability of plaintiff's back injury. Stipulation three of the

Commission's opinion and award stated that defendants accepted liability for plaintiff's back injury, and had been paying ongoing benefits since the time of the injury. In addition, by administrative decision and order filed 4 August 1999 denying defendants' Form 24 application to terminate compensation, the special deputy commissioner stated defendants had not rebutted the presumption of plaintiff's ongoing total disability.

Notwithstanding whether a form agreement was filed in this case, there is sufficient evidence that defendants stipulated to the compensability of the claim, and had been paying ongoing benefits since the time of the injury. The above stated evidence, in addition to Dr. Taft's testimony concerning plaintiff's inability to return to work, was sufficient to support a finding of plaintiff's ongoing disability. Because the finding of ongoing disability is supported by competent evidence, the Commission was correct in shifting the burden to defendants to prove plaintiff's ability to earn pre-injury wages. Therefore, this assignment of error is overruled.

## II

[3] Defendants next contend the Commission erred in concluding plaintiff suffered permanent and total disability as a result of the back injury.

> In a workers' compensation case, the plaintiff has the burden of proving she suffers from a disability as a result of a work-related injury. "Disability" is defined by statute as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.". . . To support a conclusion of disability, the Industrial Commission must thus find facts indicating: "(1) [the plaintiff] was incapable of earning pre-injury wages in the same employment, (2) she was incapable of earning pre-injury wages in any other employment, and (3) the incapacity to earn pre-injury wages in either the same or other employment was caused by [the] plaintiff's injury."

*Parker v. Wal-Mart Stores, Inc.*, 156 N.C. App. 209, 211-12, 576 S.E.2d 112, 113-14 (2003) (citations omitted) (alterations in original). The plaintiff may prove such incapacity by " 'the production of medical evidence that [s]he is physically or mentally, as a consequence of the work[-]related injury, incapable of work in any employment.' " *Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 7, 562 S.E.2d 434, 439 (quot-

ing *Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993)), *aff'd*, 357 N.C. 44, 577 S.E.2d 620 (2003). Moreover, a "work-related injury need not be the sole causative force to render an injury compensable." *Brafford v. Brafford's Constr. Co.*, 125 N.C. App. 643, 646, 482 S.E.2d 34, 37 (1997).

The Commission made the following findings: Plaintiff felt a sharp pain in her lower back when moving the sled at work on 21 December 1998 and continued to suffer back pain afterward; orthopaedic specialists Dr. Taft and Dr. Frank Rowan determined the incident caused or aggravated plaintiff's compression fractures; plaintiff took medications to mitigate the pain of compression fractures; Dr. Taft opined plaintiff would not be able to return to work because of her osteoporosis and compression fractures; and Dr. Taft was not optimistic that plaintiff would be able to perform a sedentary job with no lifting requirements. These findings support the conclusion of disability, as they demonstrate that the injury caused plaintiff's incapacity to earn pre-injury wages in any employment. *See Knight*, 149 N.C. App. at 6-8, 562 S.E.2d at 439-40 (a physician's testimony that the plaintiff, who had a history of back injuries, continued to suffer from pain due to the back injury at issue and the plaintiff's credible testimony that the severe back pain did not permit him to work supported the Commission's conclusion of total disability).

Furthermore, as the Commission found, defendants did not present any "evidence that employment opportunities exist for plaintiff which [s]he has not explored given h[er] 'age, education, physical limitations, vocational skills, and experience.' " *Webb*, 141 N.C. App. at 513, 540 S.E.2d at 794 ("[o]nce the employee has shown a disability, the burden then shifts to the employer to 'produce evidence that suitable jobs are available for the employee and that the employee is capable of getting one, taking the employee's physical and vocational limitations into account' ") (citation omitted).[1]

The findings also support the conclusion that the disability is permanent and total. A permanent and total disability occurs when an employee is incapable of earning any wages on a permanent basis. *See McKenzie v. McCarter Elec. Co.*, 86 N.C. App. 619, 621, 359 S.E.2d

---

1. In their brief to this Court, defendants suggest that Wal-Mart may possibly offer plaintiff employment compatible with her work restrictions. However, the record and the transcripts do not show evidence of such an intention, and we therefore do not consider defendants' suggestion. *See* N.C.R. App. P. 9(a) (this Court's "review is solely upon the record on appeal and the verbatim transcript of proceedings").

249, 250 (1987) (a permanent and total disability occurs when "an employee sustains an injury which results in [her] inability to function in any work-related capacity at any time in the future"). Dr. Taft's opinion that plaintiff would not be able to return to work and his reservation of plaintiff's ability to perform a sedentary job with no lifting requirements show her incapacity to earn any wages on a permanent basis.

In addition, contrary to defendants' assertion, a finding of maximum medical improvement (MMI) is not a prerequisite for an award of benefits pursuant to N.C. Gen. Stat. § 97-29. "The point at which the injury has stabilized is often called [MMI,] although that term is not found in the statute itself." *Carpenter v. Indus. Piping Co.*, 73 N.C. App. 309, 311, 326 S.E.2d 328, 330 (1985). MMI is "a purely medical determination." *Walker v. Lake Rim Lawn & Garden*, 155 N.C. App. 709, 717, 575 S.E.2d 764, 769, *disc. review denied*, 357 N.C. 67, 579 S.E.2d 577 (2003). In contrast, " 'disability' is not simply a medical question, but includes an assessment of other vocational factors, including age, education, and training." *Russos v. Wheaton Indus.*, 145 N.C. App. 164, 168, 551 S.E.2d 456, 459 (2001) (citation omitted), *disc. review denied*, 355 N.C. 214, 560 S.E.2d 135 (2002). MMI, "which does not include these other aspects of disability as defined by the Workers' Compensation Act, therefore cannot by itself establish a resumption of wage earning capacity." *Id.* In other words, "MMI does not represent the point in time at which a loss of wage-earning capacity under N.C. Gen. Stat. § 97-29 . . . automatically converts from 'temporary' to 'permanent.' " *Knight*, 149 N.C. App. at 16, 562 S.E.2d at 445. This assignment of error is overruled.

III

[4] Last, defendants argue the Commission erred in concluding that defendants were ordered to schedule a bone scan, and further erred in finding that defendants had not complied with said order.

Paragraph 2 under the award section of the deputy commissioner's 29 December 2000 opinion and award clearly states: "Defendants shall pay for a current bone scan, to be directed by Dr. Taft, the current treating physician, to determine whether the compression fractures at L1 and L2 have healed." Subsequently, plaintiff informed the Commission, via letter dated 17 September 2001, the bone scan scheduled for 11 September 2001 was cancelled because defendant had failed to authorize the scan.

There is sufficient evidence that defendants were under order to authorize a bone scan, and had failed to do such. This assignment of error is overruled.

Affirmed.

Judges CALABRIA and ELMORE concur.