***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Berger, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. A legal index of documents was marked as stipulated exhibit 1 and was received into evidence.
2. An index of medical records was marked as stipulated exhibit 2 and was received into evidence.
3. All the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. The employer/employee relationship existed between plaintiff and defendant-employer at all times relevant to this case.
5. PMA Insurance Group provided the defendant-employer with workers' compensation coverage.
6. Plaintiff suffered an injury by accident to the low back on October 4, 1999. Plaintiff's claim for a back injury on October 4, 1999, was accepted via a Form 60 filed on November 10, 1999.
7. Plaintiff's average weekly wage was $549.75, and her weekly compensation rate is $366.62, as shown on the Form 60.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 58 years old, and possessed a nursing degree and an associate's degree in education. Plaintiff had served for 15 years as the Health Nutrition Coordinator for the defendant-employer. Plaintiff's primary job duties required her to do dental screenings for 3 to 5 year olds in the Head Start program for Cleveland County Schools.
2. As a result of her October 4, 1999, compensable injury, plaintiff underwent an L4-5 interbody fusion on October 10, 2000.
3. On or about July 23, 2001, plaintiff was released to return to work in the Health Nutrition Coordinator position with a fifteen pound lifting restriction.
4. Plaintiff's job duties as the Health Nutrition Coordinator required her to stoop or squat in order to be at eye level with the children that are examined, and to lift children that weigh forty pounds on average.
5. Upon returning to work, plaintiff was unable to sit or stand for more than two hours without experiencing unbearable pain. This pain would cause the plaintiff to exhibit tears noticeable to her peers.
6. Plaintiff's quality of work declined as compared to her work performance prior to her October 4, 1999, compensable injury.
7. Plaintiff is taking methadone and hydrocodeine in order to alleviate the pain she is experiencing. Plaintiff is also using a TENS unit to alleviate her pain.
8. Plaintiff is unable to perform the essential job duties of the Health Nutrition coordinator, which requires bending and lifting.
9. Plaintiff discontinued working for Cleveland County Headstart on or about May 1, 2003. From May 1, 2003, to the date of the hearing on before the Deputy Commissioner on September 17, 2003, plaintiff has been receiving short-term disability compensation from Cleveland County Headstart.
10. As of May 2003, plaintiff has reached maximum medical improvement with regard to her October 4, 1999, compensable back injury.
11. As a result of the compensable injury, plaintiff has sustained a twenty-five percent permanent partial disability to her back.
12. Plaintiff is unable to return to work as the Health Nutrition Coordinator for Cleveland County Headstart and is unable to work in any other employment.
13. Plaintiff is unable to perform regular work of any kind due to the unbearable pain that she is experiencing. As a result of the October 4, 1999, compensable injury, plaintiff is permanently and totally disabled.
14. Plaintiff suffers from nerve damage as a result of her injury. Throughout the time she had returned to work after the injury and continuing, plaintiff could not sit long, could not stand long, could not lift her legs, and could not bend to tie her shoes, all due to back pain. She is in pain twenty-four hours daily, takes pain medication, and is not supposed to bend, push, or lift. Her back pain disrupted her work. After sitting at work too long her back would lock up, and her right leg and foot would go out. Sometimes she had to stop her car to walk around and loosen up. She wore a back brace and a TENS Unit for back pain. She had to get on her knees to retrieve files from her bottom drawers. The pain medications interfered with her ability to stay alert and drive.
15. Plaintiffs co-worker, Donnie Cook, worked for HeadStart for 24 years, the last 15 years as Ms. Palmer's assistant. Their job was to set dental appointments and physical exams for 3 and 4 year old children in the HeadStart program in Cleveland County.
16. Mrs. Cook testified, and the Full Commission finds as fact, "after her back surgery she couldn't drive well" because her back would tighten up so badly. At times Ms. Cook had to pull over and let plaintiff walk around the car because she was in such pain she would cry. Plaintiff could not make the drive from the HeadStart office in Kings Mountain (southeastern end of the county) to the school in Casar (northern end of the county) without having to stop and walk around the car due to back pain.
17. Plaintiffs job required her to pick up children weighing up to 40 to 45 pounds, and to bend down with the children to read the scales, check their teeth and eyes. Plaintiff sometimes appeared to be in pain to the port of tears when bending down to work with the children.
18. After her back surgery, plaintiff took medicine for her pain, but the medicine affected her ability to drive so she let Ms. Cook drive thereafter. After her back surgery plaintiff performed her job only 50 to 70% as well as she had done before, and what she was able to do took much longer to perform. After surgery plaintiff tired easily, could not sit or stand long, and stood and walked in pain.
19. Although plaintiff was discouraged by her employer from lifting children after her injury, her job required her to lift children during the hearing and dental exams. Dentists would do more than 200 dental exams at a time and plaintiff helped move children and out of the dental chairs in a timely manner, sometimes lifting children weighing up to 50 and even 70 pounds.
20. Patti Norman, program director for HeadStart for 2 1-1/2 years and plaintiffs supervisor, testified, and the Full Commission finds as fact, that plaintiff was not able to perform her job duties to a satisfactory level within the restrictions set out for her because plaintiff "was unable to sit or stand or drive for any extended period of time. She just could not . . . remain on the job . . . she couldn't sit in her chair for more than a couple of hours at a time without severe pain." She further testified, and the Full Commission finds as fact, ". . . I was certain that she would not be able to continue her employment because of the pain, at some point in time there would have to be a cessation of her employment."
21. Plaintiff produced uncontroverted medical evidence that she is totally disabled. Dr. D'Amore and Dr. Powers, plaintiffs authorized treating pain management physicians, both testified that Ms. Palmer was no longer able to work due to her chronic pain from her back injury. Both doctors explained that Ms. Palmer is in severe, chronic pain that requires narcotic pain medications, and that a side effect of the pain medication is sleepiness. Ms. Palmer and Ms. Cook both testified about the detrimental effects Ms. Palmer's pain medications had on her ability even to drive safely.
22. Although defendants now argue that both doctors are not competent to opine about Ms. Palmer's disability, the Full Commission finds that Dr. D'Amore and Dr. Powers are competent and credible because (A) they both are Board Certified experts in pain management medicine, (B) they both actually treated plaintiff for her pain as the authorized treating physicians in this workers' compensation case, (C) defendants showed no dissatisfaction with these doctors until after their depositions were taken, and (D) defendants produced no evidence, medical or otherwise, to contradict these doctors' opinions that Ms. Palmer is totally disabled.
23. Plaintiff produced evidence that any job search would be futile. It is undisputed that Ms. Palmer, who is 58 years old, has severe chronic back pain every day. Ms. Palmer testified that she cannot work due to her severe back pain. Her co-worker Donie Cook, her supervisor Patti Norman, and her authorized pain management physicians verified that she cannot perform full-time work because she has so much back pain. Ms. Norman testified that Ms. Palmer could not work any longer due to her severe back pain. Dr. D'Amore testified that she could no longer work as of May 2003.
24. The fact that plaintiff must take narcotic pain medication to function would disqualify her from almost every conceivable job. She simply could not pass a drug test. In addition, her pain medication impairs her mental faculties to the point she cannot drive safely after taking it.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to receive total disability compensation in the amount of $366.62 for the time period beginning May 1, 2003, to the present and continuing until further order of the Industrial Commission. A portion of this amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below. N.C. Gen. Stat. § 97-29. Defendants shall pay interest at 8 percent per year from September 17, 2003 as provided by law.
2. In this case, where there was no prior Form 21 agreement and no prior finding of disability by the Industrial Commission, plaintiff could meet her burden to prove that she is permanently and totally disabled in one of four ways. Russell V. Lowe — ProductDistribution, 108 NC. App. 762, 765, 425 S.E.2d 454,457 (1993). Those four ways are:
(1.) Medical evidence. Plaintiff can produce medical evidence that she is physically or mentally incapable of work in any employment because of her work related injury; or
(2.) Unsuccessful Job Search. Plaintiff can produce evidence that although she may be capable to do some work, she made a reasonable job search and has been unsuccessful in obtaining an offer of suitable employment; or
(3.) Futile to Job Search. Plaintiff can produce evidence that although she may be capable of some work, it would be futile because of her pre-existing condition (i.e. age, inexperience, lack of education, etc.) and her permanent injury, to seek other employment; or
(4.) Evidence that plaintiff obtained other employment at a wage less than that earned prior to the injury.
3. The recent case of Clark v. Wal-Mart,163 N.C. App. 686, 594 S.E.2d 433 (April 2004) also illustrates how an employee can prove permanent and total disability. In Clark, defendants contended that the Commission's finding that plaintiff was totally disabled was not supported by evidence in light of medical testimony that plaintiff could perform sedentary work under severe restrictions. But the Court held that the Commission's findings were supported by the opinion from the treating doctor that plaintiff would not be able to return to work because of her injuries and that he was not optimistic that plaintiff would be able to perform a sedentary job with no lifting requirements.Clark, 163 N.C. App, at 692, 594 S.E.2d at 437. Defendants also argued that the Commission incorrectly shifted to defendants the burden of rebutting a presumption of ongoing disability where no Form 21 Agreement had been filed. But the Court wrote that the treating doctor's testimony that plaintiff was disabled supported the Commission's finding of plaintiff's on-going disability and shifted the burden to defendants to prove plaintiff's ability to earn pre-injury wages.Clark, 163 N.C. App. at 693-4, 594 S.E.2d at 438. The Court also held that the treating doctor's opinion that plaintiff would not be able to return to work and that he had reservations of plaintiffs ability to perform even sedentary work supported the Commission's conclusion that plaintiff was permanently and totally disabled.Clark, 163 N.C. App. at 694-695, 594 S.E.2d at 439. Furthermore, as the Commission found, defendants did not present any evidence that employment opportunities existed for plaintiff which she has not explored given her age, education, physical limitations, vocational skills, and experience. The Court wrote: "Once the employee has shown a disability, the burden then shifts to the employer to produce evidence that suitable jobs are available for the employee and that the employee is capable of getting one, taking the employee's physical and vocational limitations into account." Clark,163 N.C. App. at 694, 594 S.E.2d at 438-9.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay total disability compensation in the amount of $366.62 for the period beginning May 1, 2003, to the present and continuing until further order of the Industrial Commission. A portion of this amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
2. A reasonable attorney fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent (25%) of the lump sum due plaintiff under paragraph 1 of this Award shall be deducted from that sum and paid directly to plaintiffs counsel; thereafter, every fourth check shall be sent directly to plaintiffs counsel.
3. Defendants shall pay expert witness fees in the amounts of $260.00 to Dr. Powers, and $260.00 to Dr. D'Amore.
4. Defendants shall pay the costs.
This 12th day of May 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER