JACK WALKER, Employee, Plaintiff v. LAKE RIM LAWN and GARDEN, Employer; and NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE CO., Carrier; Defendants

No. COA01-1525

(Filed 21 January 2003)

### 1. Workers' Compensation— temporary total disability— maximum medical improvement

The Industrial Commission did not err in a workers' compensation case by continuing temporary total disability benefits to plaintiff employee and by failing to find and conclude that plaintiff had reached maximum medical improvement, because: (1) whether the employee has reached the point of maximum medical improvement is not necessarily a crucial fact upon which the

question of plaintiff's right to compensation depends, and such a finding is immaterial in this case in light of plaintiff's continuing total loss of wage earning capacity; and (2) the evidence supports the Commission's finding that plaintiff has not reached maximum medical improvement since he is in need of and would benefit from both chronic pain treatment and a vocational rehabilitation program.

2. **Workers' Compensation— credibility—no showing of unjustifiable refusal of suitable employment**

The Industrial Commission did not err in a workers' compensation case by its finding and conclusion that there was no unjustifiable refusal on the part of plaintiff to accept suitable employment under N.C.G.S. § 97-32, because: (1) the Court of Appeals cannot revisit the Commission's credibility determinations; (2) the evidence supports the Commission's findings and conclusions that plaintiff's temporary and ultimately unsuccessful trial return to work at a gas station was insufficient to establish that plaintiff refused suitable employment and does not establish that plaintiff had regained wage earning capacity; and (3) plaintiff reported to a job at a restaurant and was told that the job was no longer available.

Appeal by defendants from Opinion and Award entered 7 September 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 12 September 2002.

*Brumbaugh, Mu & King, P.A., by Leah L. King, for plaintiff-appellee.*

*Young, Moore and Henderson, P.A., by Dawn Dillon Raynor and Zachary C. Bolen, for defendant-appellants.*

HUDSON, Judge.

Defendants appeal an Opinion and Award entered 7 September 2001 by the North Carolina Industrial Commission, awarding compensation to plaintiff, Jack Walker, for a work-related injury. We affirm.

The plaintiff filed a worker's compensation claim alleging that he injured his right knee on 26 February 1998 when he fell while ascending a flight of stairs during his employment with defendant, Lake Rim Lawn and Garden ("Lake Rim").

Before plaintiff filed his claim, defendant, on 14 April 1998, filed a Form 63 agreeing to pay benefits without prejudice, pursuant to N.C. Gen. Stat. § 97-18(d). On 13 May 1998, defendants filed a Form 60 admitting plaintiff's right to temporary total disability compensation at the rate of $172.25 per week. Plaintiff filed a Form 18 Notice of Claim around 18 November 1998. Shortly thereafter, defendants assigned both medical and vocational rehabilitation counselors to plaintiff, and began attempting to place him in a job. Between February 1999, and February 2001, plaintiff made two unsuccessful attempts to return to work, and defendants filed at least four Forms 24, "Applications to Terminate or Suspend Benefits," including one filed after the Opinion and Award of the Deputy Commissioner. None were approved. The claim was heard 28 March 2000 and in an Opinion and Award filed 15 December 2000, Deputy Commissioner Theresa B. Stephenson awarded plaintiff ongoing total disability benefits as well as medical treatment and a ten percent penalty, and granted plaintiff's motion to remove the rehabilitation counselor.

In an Opinion and Award filed 7 September 2001, the Full Commission affirmed and also awarded plaintiff benefits for total disability from 28 April 1999 continuing until further order of the Commission, assessed a ten percent penalty on all compensation since 28 April 1999 that was not paid within fourteen days of when it became due, granted plaintiff's Motion to Remove Ted Sawyer as the vocational rehabilitation professional, and ordered defendants to pay plaintiff's reasonably necessary medical expenses. The Full Commission also found and concluded that the plaintiff had not "unjustifiably refused suitable employment," and that "[a]lthough there is evidence of record that plaintiff has reached maximum medical improvement, the greater weight of the evidence demonstrates that plaintiff is in need of additional pain treatment and vocational rehabilitation assistance."

Below is a summary of some of the facts found by the Full Commission. Following the injury, plaintiff was treated at Cape Fear Valley Medical Center emergency room and referred to orthopaedist Dr. James P. Flanagan. On 14 May 1998, defendant-carrier retained Sharon Tobias as the medical rehabilitation professional. An MRI performed on plaintiff's knee showed a possible medial meniscus tear, and Dr. Flanagan recommended arthroscopic surgery. Prior to approving the surgery, defendants sent plaintiff to Dr. Brian Szura in Cary for a second opinion regarding the need for surgery. Dr. Szura evaluated plaintiff and concurred with Dr. Flanagan's assessment.

On 2 June 1998, Dr. Flanagan performed a diagnostic arthroscopy on plaintiff's right knee. The post-operative diagnosis indicated Chondromalacia medial femoral condyle of Grade 3 and 4, and Chondromalacia patella medial facet of Grade 4. Plaintiff continued his post-operative treatment with Dr. Flanagan until 6 August 1998, when defendant-carrier transferred his care to Dr. Szura in Cary, a considerable distance from plaintiff's home.

Dr. Szura first saw plaintiff on 1 September 1998. Dr. Szura's treatment of plaintiff consisted of pain medications and anti-inflammatory medication as well as physical therapy and referral to pain management. On 12 December 1998, Dr. Szura opined that plaintiff was at maximum medical improvement and rated plaintiff with a ten percent permanent partial disability to the right leg as a result of the compensable injury. Dr. Szura further indicated that plaintiff had permanent restrictions of no kneeling, stooping, or lifting more than fifty pounds, no climbing stairs other than on an occasional basis, and no significant work on ladders. Dr. Szura then referred plaintiff to Dr. Sanitate for pain management.

On 11 September 1998, defendants retained Ted Sawyer of Crawford & Company to be plaintiff's vocational rehabilitation professional. Plaintiff first met with Sawyer on 19 September 1998. Sawyer then began preparing job descriptions and presenting them to Dr. Szura for approval. Mr. Sawyer testified that the job descriptions he prepared were general in nature and not necessarily prepared based on a specific job with a specific employer. Moreover, Mr. Sawyer did not have job descriptions reviewed and approved by the prospective employers for accuracy.

In February 1999, plaintiff applied for a job at an Amoco service station. Mr. Sawyer presented a generalized job description to Dr. Szura, who approved it on 9 February 1999. The actual job at Amoco required plaintiff to work two shifts: a short shift lasting four to six hours and a long shift lasting nine hours. The job also required plaintiff to kneel or stoop to stock shelves and work the safe, and either to stand or walk for a majority of his shift. After working for several weeks, plaintiff experienced an increase in pain in his knee.

Plaintiff discussed his increased pain with Dr. Szura, who advised plaintiff to discuss the problems with his employer. Plaintiff did so and as a result, he was terminated by Sharon Eason, the manager at the Amoco job.

Plaintiff continued to consult with Mr. Sawyer after Amoco terminated him. In August, 1999, plaintiff applied for and was offered a job as a dining room attendant at McDonald's. However, when plaintiff called to report to work and pick up the appropriate paperwork, McDonald's withdrew the job offer.

[1] In their first argument, defendants contend that the "Commission erred by failing to find and conclude that plaintiff had reached maximum medical improvement." On appeal of a workers' compensation decision, we are "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). An appellate court reviewing a workers' compensation claim "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). In reviewing the evidence, we are required, in accordance with the Supreme Court's mandate of liberal construction in favor of awarding benefits, to take the evidence "in the light most favorable to plaintiff." *Id.*

The Full Commission is *the* "sole judge of the weight and credibility of the evidence." *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. Furthermore,

> the Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible. Requiring the Commission to explain its credibility determinations and allowing the Court of Appeals to review the Commission's explanation of those credibility determinations would be inconsistent with our legal system's tradition of not requiring the fact finder to explain why he or she believes one witness over another or believes one piece of evidence is more credible than another.

*Id.* at 116-17, 530 S.E.2d at 553.

Here, defendants have assigned error to the following paragraphs in the Opinion and Award:

Findings of Fact

* * *

7. On 12 December 1998, Dr. Szura found plaintiff to be at maximum medical improvement and rated plaintiff with a ten percent (10%) permanent partial disability rating to the right leg. Dr. Szura placed plaintiff under permanent restrictions of no kneeling, stooping, or lifting more than fifty (50) pounds. Dr. Szura also limited plaintiff to no significant work on ladders or climbing stairs more than occasionally.

* * *

9. In February 1999, Mr. Sawyer prepared a job description for a Cashier II position, which Dr. Szura approved. This description included running the cash register and allowed plaintiff to sit or stand as needed. The Cashier II position at Amoco paid $5.15 per hour and plaintiff would work 28 to 36 hours per week. The supervisor at Amoco did not review the job description, which Mr. Sawyer prepared.

10. Plaintiff accepted and began the job at Amoco on 12 February 1999. The position had an alternating schedule that required plaintiff to work some short shifts of four to six hours each but also required plaintiff then to work some long shifts of nine hours each. Furthermore, this job required plaintiff to kneel or stoop to stock shelves and place money in the safe. Additionally, plaintiff was responsible for mopping and cleaning bathrooms and lifting as much as 35 pounds. The job description approved by Dr. Szura did not fully enumerate all of the duties of the Amoco cashier's position. Plaintiff received temporary partial disability benefits as a result of the fact that his wages at Amoco were less than those earned while employed with defendant-employer.

11. Plaintiff's right knee pain worsened, and he developed increased atrophy and tenderness. Plaintiff related to Dr. Szura by phone that the nine-hour shifts caused increased pain. Dr. Szura informed plaintiff he could not do anything and encouraged plaintiff to discuss the work hours with Amoco.

12. Plaintiff discussed his difficulties with Sharon Eason, manager at Amoco, and informed Ms. Eason that the nine-hour shifts were causing increased knee pain. Plaintiff requested

four to six hour shifts. Ms. Eason informed plaintiff that Amoco could no longer use him at all if he was unable to work the nine-hour shifts. As a result, Amoco terminated plaintiff on 27 April 1999.

13. Ms. Eason confirmed during her deposition that the Amoco position required bending and stooping. Furthermore, during the nine-hour shift, approximately six hours on average is spent standing or walking. The position also required lifting up to 35 pounds. Ms. Eason observed plaintiff limping while working and plaintiff complained to Ms. Eason of knee pain and swelling. The actual description of the Cashier II position at Amoco is contrary to Mr. Sawyer's summary presented to Dr. Szura that stated no lifting in excess of twenty pounds, no significant climbing, stooping or kneeling.

14. Following plaintiff's termination from Amoco, defendants did not reinstate plaintiff's benefits. In May 1999, defendants filed a Form 24 requesting plaintiff's benefits be terminated and alleging plaintiff had misrepresented the physician's restrictions to Amoco.

* * *

16. In May 1999 Ted Sawyer wrote Dr. Szura inquiring whether plaintiff could perform the Cashier II duties, as enumerated through Mr. Sawyer's description, for eight hours a day. Dr. Szura replied that plaintiff was able to perform the job described full-time, eight hours per day. At the time he approved the job description, Dr. Szura had not examined plaintiff since December 1998 and based his opinion on Mr. Sawyer's inaccurate job description. Furthermore, plaintiff experienced difficulty with the nine-hour shift, which Dr. Szura did not address.

* * *

21. On 25 August 1999, plaintiff received a job offer from McDonald's for a dining room attendant position. The salary for that position was $5.15 per hour working three to five days per week, eight hours each day. Plaintiff's employment was to begin 30 August 1999. Dr. Szura approved the job duties; however, McDonald's withdrew their offer prior to plaintiff beginning work. During the application process, plaintiff expressed to McDonald's that he would have problems lifting and carrying.

* * *

26. At the 25 May 2000 visit with Dr. Sanitate, plaintiff had full knee extension and greater than 130 degrees of flexion. Plaintiff continued to experience mild warmth appreciated about the peripatellar region. Dr. Sanitate considered plaintiff at maximum medical improvement.

* * *

29. Dr. Flanagan rated plaintiff at maximum medical improvement with a twenty percent (20%) permanent partial disability of his right leg and limited plaintiff to driving no more than two hours at a time. Dr. Flanagan recommended vocational rehabilitation for plaintiff for work within restrictions of essentially sedentary work.

* * *

32. Plaintiff's termination from Amoco was directly related to his inability to work nine-hour shifts due to his knee pain and swelling. Plaintiff did not refuse to work at Amoco and attempted to work out a schedule, which he could tolerate.

33. The dining room attendant position at McDonald's required too much standing for plaintiff to perform within Dr. Flanagan's restrictions. Additionally, McDonald's withdrew their offer. There is insufficient evidence of record to determine plaintiff was ever offered any further positions, which he should have taken.

34. Although there is evidence in the record that plaintiff has reached maximum medical improvement, the greater weight of the evidence demonstrates that plaintiff has not reached maximum medical improvement or the end of the healing period. Plaintiff is in need of and would benefit from both chronic pain treatment and a vocational rehabilitation program. There is no evidence of record whether plaintiff was allowed to keep the 5 July 2000 appointment with vocational rehabilitating in Fayetteville due to defendant's over-zealousness in attempting to suspend or terminate plaintiff['s] benefits. Under the circumstances of this case, plaintiff would benefit from transferring vocational rehabilitation services to a professional other than Ted Sawyer.

Conclusions of Law

* * *

2. Plaintiff has not unjustifiably refused suitable employment. N.C. GEN. STAT. § 97-32.

3. As a result of plaintiff's compensable injury and failed attempt to work at Amoco, plaintiff is entitled to total disability from 28 April 1999 and continuing until further Order of the Commission at a weekly compensation rate of $175.48. Although there is evidence of record that plaintiff has reached maximum medical improvement, the greater weight of the evidence demonstrates that plaintiff is in need of additional pain treatment and vocational rehabilitation assistance. N.C. GEN. STAT. § 97-29.

However, their brief does not bring forward any discussion of any of these particular findings other than finding 34 and conclusion 3 (argument I), and findings 10, 12, 13, 32 and 33, and conclusion 2 (argument II). Thus, the assignments of error to the remaining findings and conclusions are deemed abandoned. N.C. R. App. P. 28(b)(6).

Defendants first argue that since all of the physicians who treated plaintiff opined that he had reached maximum medical improvement and the Commission made specific findings recognizing this, the Commission "ultimately reached an opposite and factually unsupported conclusion." Defendants further contend that since "plaintiff has reached maximum medical improvement, the Industrial Commission's award of continuing temporary total disability benefits must accordingly be reversed."

However, in making its determinations, the Commission "is not required . . . to find facts as to all credible evidence. That requirement would place an unreasonable burden on the Commission. Instead the Commission must find those facts which are necessary to support its conclusions of law." *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 602, 532 S.E.2d 207, 213 (2000); *see* N.C. Gen. Stat. § 97-86 (2001). Moreover, the Commission must "make specific findings with respect to crucial facts upon which the question of plaintiff's right to compensation depends." *Gaines v. Swain & Son, Inc.*, 33 N.C. App. 575, 579, 235 S.E.2d 856, 859 (1977).

Maximum improvement as a purely medical determination occurs when the employee's physical recovery has reached its peak. *See Carpenter v. Industrial Piping Co.*, 73 N.C. App. 309, 311, 326 S.E.2d 328, 330 (1985). However, maximum medical improvement is not the point at which temporary total disability must end, if the employee has not regained his or her ability to earn pre-injury wages. *See Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 562 S.E.2d 434 (2002), *disc. review denied*, 355 N.C. 749, 565 S.E.2d 667 (2002);

*Russos v. Wheaton Indus.*, 145 N.C. App. 164, 167-68, 551 S.E.2d 456, 459 (2001), *disc. review denied*, 355 N.C. 214, 560 S.E.2d 135 (2002), *reh'g denied*, 355 N.C. 494, 564 S.E.2d 44 (2002). Thus, whether the employee has reached the point of maximum medical improvement is not necessarily a "crucial fact upon which the question of plaintiff's right to compensation depends." *Gaines*, 33 N.C. App. at 579, 235 S.E.2d at 859; *see also, Knight*, 149 N.C. App. at 17, 562 S.E.2d at 445 (holding that even if defendants "clearly established that plaintiff had reached [maximum medical improvement] prior to the hearing, and that, therefore, the evidence does not support the Commission's finding that plaintiff had not reached [maximum medical improvement] as of the hearing, we find such error to be immaterial at this time"). Here, as well, such a finding is immaterial in light of plaintiff's continuing total loss of wage earning capacity.

In addition, the evidence does support that part of the Commission's finding Number 34, that "plaintiff has not reached maximum medical improvement or the end of the healing period . . . [since he] is in need of and would benefit from both chronic pain treatment and a vocational rehabilitation program." Both pain treatment and vocational services are considered medical compensation as defined in N.C. Gen. Stat. § 97-2(19), and are designed to "give relief and . . . to lessen the period of disability . . . ." N.C. Gen. Stat. § 97-2(19) (2001). Therefore, until he has reached maximum vocational recovery, this plaintiff's healing period is not yet at an end. Thus, this argument is without merit.

**[2]** Defendants next argue that the Commission "erred by failing to find and conclude that plaintiff unjustifiably refused suitable employment pursuant to N.C. Gen. Stat. § 97-32." Defendants specifically argue that findings 12 and 32 and conclusion of law 2 were based on the Commission's incorrect assessment of plaintiff's credibility. To the extent that defendant seeks to have this Court revisit the Commission's credibility determinations, we may not do so. *See Deese*, 352 N.C. at 116, 530 S.E.2d at 553. We conclude that the evidence supports the Commission's findings and conclusions that plaintiff's temporary and ultimately unsuccessful trial return to work with Amoco is insufficient to establish that plaintiff refused suitable employment and do not establish that plaintiff had regained wage earning capacity.

Dr. Szura testified that he approved the job as within plaintiff's restrictions based upon the written description provided by Mr. Sawyer. Sharon Eason, plaintiff's supervisor at Amoco, testified that

this was not an accurate description of the plaintiff's job duties, which required bending, stooping, and lifting that exceeded the limitations imposed by Dr. Szura.

Though plaintiff attempted to work the job, he indicated that the pain became too great to continue if he had to work for more than six hours at a time. Plaintiff related this to Ms. Eason, who informed him that she could not accommodate his requests, and subsequently terminated him.

Defendants also contend that plaintiff refused suitable employment at McDonalds. The evidence shows that plaintiff was offered a job, that he accepted the job, and that when he reported to work he was informed that the job was no longer available. Thus, we believe that the Commission appropriately found and concluded that there was no unjustifiable refusal on the part of plaintiff to accept suitable employment.

Affirmed.

Judges TIMMONS-GOODSON and CAMPBELL concur.

(Judge Campbell concurred prior to 1/1/03).