RACHEL N. JENKINS, Employee, Plaintiff v. EASCO ALUMINUM, Employer; HARTFORD SPECIALTY RISK SERVICES, Carrier, Defendants

No. COA02-1446

(Filed 6 July 2004)

**1. Workers' Compensation— reversal of prior award—authority to find facts and make conclusions**

The Industrial Commission did not exceed its authority in a workers' compensation case by reversing its prior award, findings of fact, and conclusions of law, because the Court of Appeals' instruction on remand did not deprive the Commission of its authority to find the facts and make the conclusions of law it deemed proper.

**2. Workers' Compensation— conclusion of law—make work**

The Industrial Commission did not err in a workers' compensation case by its conclusion of law that plaintiff worker's position was "make work," because: (1) there was no indication that

plaintiff would be hired elsewhere in the area and although a witness testified that positions similar to plaintiff's quality inspector position existed at other manufacturing plants in the area, the witness did not conclude that plaintiff would be hired in any of these positions given her injury; (2) plaintiff produced evidence at trial tending to show that she could only perform some of the tasks of her position without assistance, that many of defendants' suggested jobs for plaintiff involved the use of both hands, that she was limited in her ability to use her injured hand, and that defendants' vocational consultant was unable to locate suitable employment for plaintiff; and (3) considering the evidence in the light most favorable to plaintiff, defendants failed to sufficiently establish that plaintiff was not prohibited from gaining competitive employment based on her continuing disability.

3. **Workers' Compensation— conclusion of law—willful failure to comply with statutory safety requirement**

   The Industrial Commission did not err in a workers' compensation case by its conclusion of law that defendant company willfully failed to comply with statutory standards which entitled plaintiff to a ten percent increase in compensation under N.C.G.S. § 97-12, because: (1) testimony at the hearing from both plaintiff and plaintiff's coworkers firmly established that on the date of plaintiff's injury, there were no guards on the brake press machine plaintiff was operating; (2) a coworker testified that she was aware of three different occasions when a brake press machine had operated on its own and that she had reported the machines as malfunctioning, and the coworker also testified that it would have been impossible for finger injuries or amputations to have occurred had a guard been in place on plaintiff's machine; (3) the subsequent application of safety devices by defendant in the instant case established that it was possible to install guards on the press brake machines; and (4) plaintiff offered sufficient evidence to allow the Commission to conclude that the absence of the guard was the proximate cause of plaintiff's injury.

Appeal by defendants from opinion and award entered 15 July 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 24 May 2004.

*George W. Lennon, Esq., and Hugh D. Cox, Jr., Esq., for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by J. Gregory Newton and Jaye E. Bingham, for defendants-appellants.*

TIMMONS-GOODSON, Judge.

Easco Alumninum Corporation ("Easco") and Hartford Specialty Risk Services, Inc. ("Hartford") (collectively, "defendants") appeal an opinion and award of the North Carolina Industrial Commission ("the Commission") awarding Rachel N. Jenkins ("plaintiff") temporary disability payments and prosthetic fingers at defendants' expense. For the reasons stated herein, we affirm the Commission's opinion and award.

The pertinent facts and procedural history of the instant case are as follows: On 17 May 1993, plaintiff was injured in an industrial accident while employed as a brake press machine operator for Easco. Plaintiff remembers experiencing a period of dizziness prior to losing consciousness. During the accident, the fingers on plaintiff's left hand were crushed by the operational mechanisms of the brake press machine. Although metal guards designed to protect workers' hands were installed immediately after the date of plaintiff's accident, no such metal guards were in place at the time of plaintiff's injury.

As a result of plaintiff's injury, Dr. Robert Kahn ("Dr. Kahn") assigned a 75% permanent partial disability rating to four fingers of plaintiff's left hand. Plaintiff was compensated by Easco for eleven months after her accident. In April 1994, plaintiff returned to work at Easco as a quality control inspector of metal parts. However, because plaintiff was the junior employee in the quality control department, she was the first employee released when Easco experienced a work slowdown in November 1996.

After being released, plaintiff requested a hearing before the North Carolina Industrial Commission regarding her disability status. On 27 August 1998, the Deputy Commissioner awarded plaintiff temporary total disability from the date of the release and increased plaintiff's compensation by ten percent pursuant to N.C. Gen. Stat. § 97-12 (2003) for alleged safety violations committed by Easco. The Deputy Commissioner also determined that plaintiff was entitled to prosthetic fingers at defendants' expense. The parties appealed the Deputy Commissioner's award to the Commission. On 6 July 1999, the

Commission reversed the Deputy Commissioner's award, concluding that while plaintiff was entitled to have prosthetic fingers provided by defendants, plaintiff was not entitled to any temporary total disability payments from defendants.

Plaintiff appealed the Commission's decision to this Court. In *Jenkins v. Easco Aluminum Corp.*, 142 N.C. App. 71, 541 S.E.2d 510 (2001) (*"Jenkins I"*), we vacated the Commission's decision and remanded the case, instructing the Commission to consider all the evidence on disability and safety violations, to rule on plaintiff's pending motions and objections, and to enter awards where it deemed appropriate. On remand, the Commission reversed its prior decision and awarded plaintiff temporary disability payments from the date of release as well as prosthetic fingers should plaintiff desire them. Pursuant to N.C. Gen. Stat. § 97-12, the Commission also increased plaintiff's compensation for temporary total disability benefits because of alleged safety violations committed by Easco. It is from this opinion and award that defendants appeal.

---

The issues on appeal are (I) whether the Commission erred in reversing its prior award, findings of fact, and conclusions of law; (II) whether the Commission's conclusion of law that plaintiff's position was "make work" was supported by adequate findings of fact; and (III) whether the Commission's conclusion of law that Easco willfully failed to comply with statutory standards was supported by adequate findings of fact.

[1] Defendants first argue that the Commission erred in reversing its prior award, findings of fact, and conclusions of law. Defendants assert that the Commission exceeded its scope of authority on remand by wholly reversing its prior opinion and award. We disagree.

In *Jenkins I*, plaintiff argued that the Commission erred in failing to consider the testimony of Dr. Sheldon Downes ("Dr. Downes"), a Professor of Rehabilitation Counseling and Director of the Rehabilitation Counseling Program at East Carolina University. 142 N.C. App. at 77, 541 S.E.2d at 514. We recognized that " '[w]hile the Commission is the sole judge of the credibility of witnesses and may believe all or a part or none of any witness's testimony, . . . it nevertheless may not wholly disregard competent evidence[.]' " *Id.* at 78, 541 S.E.2d at 515 (quoting *Harrell v. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E.2d 830, 835, *disc. review denied*, 300 N.C. 196, 269 S.E.2d 623 (1980)). Thus, because Dr. Downes' testimony "was certainly rel-

evant to the exact point in controversy," and because there was "no mention at all of Dr. Downes' testimony in the [6 July 1999] opinion and award," we held that "the Commission erred in failing to indicate that it considered the testimony of Dr. Downes." *Jenkins I*, 142 N.C. App. at 78-79, 541 S.E.2d at 515. We then stated the following:

> Consequently, the opinion and award of the Industrial Commission must be vacated, and the proceeding "remanded to the Commission to consider all the evidence, make definitive findings and proper conclusions therefrom, and enter the appropriate order."

*Id.* at 79, 541 S.E.2d at 515 (quoting *Lineback v. Wake County Board of Commissioners*, 126 N.C. App. 678, 683, 486 S.E.2d 252, 255 (1997)).

In the instant appeal, defendants cite *Jackson v. Fayetteville Area System of Transp.*, 88 N.C. App. 123, 362 S.E.2d 569 (1987) ("*Jackson II*") in support of their argument. However, we conclude *Jackson* is inapposite to the instant case.

In *Jackson v. Fayetteville Area Sys. of Transp.*, 78 N.C. App. 412, 337 S.E.2d 110 (1985) ("*Jackson I*"), the defendant appealed the Commission's conclusion that the plaintiff sustained a compensable injury in an employment-related accident. "Because of the insufficiency of the findings as to plaintiff's injury by accident, we reverse[d] and remand[ed] the cause to the Industrial Commission for specific findings of fact regarding the injury, if any, sustained by plaintiff and the nature of that injury." *Id.* at 414, 337 S.E.2d at 112. On remand, the Commission reconsidered the entire record and reinstated the Deputy Commissioner's opinion and award, which concluded that the plaintiff's injury was not compensable. The plaintiff then appealed, and in *Jackson II*, we reversed the Commission's decision on remand, concluding that "[t]he Commission exceeded the scope of its instructions by revising its entire opinion and vacating its earlier findings." 88 N.C. App. at 127, 362 S.E.2d at 572.

The instructions to the Commission on remand were not so limited in the instant case. In *Jenkins I*, this Court determined that there was no "finding from which we [could] reasonably infer that the Commission gave proper consideration" to Dr. Downes' testimony, which we characterized as "certainly relevant to the exact point in controversy." 142 N.C. App. at 78, 541 S.E.2d at 515. However, we did not remand the case with instructions to "make

specific findings of fact" regarding Dr. Downes' testimony, as in *Jackson I*. Instead, we vacated the Commission's opinion and award, and we instructed the Commission to "*consider all the evidence*" on remand and to make "definitive findings and proper conclusions therefrom, and enter the *appropriate* order." *Id.* at 79, 541 S.E.2d at 515 (emphasis added).

Given the importance of Dr. Downes' testimony to the case, our decision and language in *Jenkins I* clearly indicated that the Commission was free to reverse its previous order on remand if, after considering Dr. Downes' testimony, it felt such a reversal was necessary. The "exact point in controversy" throughout the case has been "whether the quality inspector job performed by plaintiff was an adequate indicator of her ability to compete for similar jobs in the marketplace." *Id.* at 78, 541 S.E.2d at 515. Dr. Downes' conclusion that "because of plaintiff's physical limitations and her limited educational background and experience, there are no competitive jobs she can perform" is certainly important to whether plaintiff's inspector job was "make work" created by defendant to shield itself from further compensation payments. *Id.* at 77, 541 S.E.2d at 515. Furthermore, although she concluded that plaintiff's inspector job was not "make work," Annette Ruth ("Ruth"), defendants' vocational expert, testified at the hearing that she had not performed any tests on plaintiff like those administered by Dr. Downes but that she had examined Dr. Downes' report and had no reason to doubt either the results of the dexterity tests performed by Dr. Downes or his medical conclusions. *Id.* at 78, 541 S.E.2d at 515.

"The Commission is the sole judge of the credibility of witnesses and the weight to be given their testimony; it may accept or reject all of the testimony of a witness; it may accept a part and reject a part." *Blalock v. Roberts Co.*, 12 N.C. App. 499, 504, 183 S.E.2d 827, 830 (1971). We conclude that our instructions on remand did not deprive the Commission of its authority to find the facts and make the conclusions of law it deems proper. Thus, we hold that the Commission did not exceed its authority in reversing its prior award, findings of fact, and conclusions of law on remand. Therefore, defendants' first argument is overruled.

[2] Defendants next argue that the Commission erred in concluding as a matter of law that plaintiff's position was "make work." Defendants assert the Commission's conclusion was not supported by adequate findings of fact. We disagree.

In this argument, defendants assign error to eleven findings of fact made by the Commission in its 6 July 1999 order. However, the body of defendants' brief contains specific challenges to only one of these findings: finding of fact number eleven. Those errors assigned to other findings but not supported by argument in defendants' brief are deemed abandoned. *Hooker v. Stokes-Reynolds Hosp.*, 161 N.C. App. 111, 114-15, 587 S.E.2d 440, 443 (2003); *see* N.C.R. App. P. 28(b)(6) (2004).

Finding of fact number eleven states in pertinent part:

11. As to similar jobs in Hertford County, no evidence was submitted to show that plaintiff would be hired [as a quality inspector] in a competitive job market given her disability from the compensable injury.

Defendants contend that this portion of the finding is contradicted by Ruth's testimony. Ruth testified at the hearing concerning other jobs in the area as follows:

COUNSEL: Did you—now, outside Easco have you done any, what do you call, surveys in the area?

WITNESS: Job search activity.

COUNSEL: Yes.

WITNESS: [Plaintiff and I] met twice during this—during the time that we initiated a few months back, and we did find one particular job with the Ahoskie school system, but we secured an application and we—I followed up. They just—we're waiting. I don't know if they were hiring for assistantships or waiting 'til the fall.

COUNSEL: Okay. Is that—is there anything else you're waiting on?

WITNESS: No, that's—that's it.

COUNSEL: Okay. Did you do any type of survey—other than finding just direct jobs, a survey of what's available in her area—you know, in the Winton-Ahoskie area?

WITNESS: A labor market survey?

COUNSEL: Yeah.

WITNESS: That's generally directed through the insurance company, and I wasn't given any directions as to—to do a

JENKINS v. EASCO ALUMINUM

[165 N.C. App. 86 (2004)]

job search activity except I did—I did do a research analysis in the area based on the inspector's job to see if that type of work was transitional within other industrial companies in the Ahoskie area.

[Ruth then examines a report by Downes]

WITNESS: I did a research analysis of the local area in Hertford County with different industries, and this job does exist within other companies. They don't always call it quality control technician. It has an interchangeable name such as grader, tester, and assurance inspector.

. . . .

COUNSEL: Okay. You mentioned earlier that you talked—you called and talked to some other job—manufacturing plants in the area.

WITNESS: Yes. Uh-huh (yes).

COUNSEL: Could you tell us what you did in that regard?

WITNESS: I—I telephoned several industrial companies manufacturing [sic] that would be comparable in production factory and spoke with human resource or personnel person in charge of the company and asked them specific questions as to the type of training—if they have inspectors or quality control type of position, and what type of training and educational background would be needed to hold that position.

COUNSEL: And do you happen to recall what companies you talked to?

WITNESS: Not right off hand, but I spoke with Perdue. I spoke with Billets, Carolina Billets.

COUNSEL: Is this something you did recently that's going to be a part of another report—a vocational report?

WITNESS: I thought my company—I thought I wrote this up and my company sent it to you, but evidently—I just wrote it up last week, so what I do is that I—I dictate my reports, and I send them in. I just—it just was—

COUNSEL: When you asked me this morning if I had received a fax, was this that report?

WITNESS:  Could be.

COUNSEL:  Well, your report should be submitted at a later date. I will send that in addition to her attorney as part of your report before I send it in. That's all I have.

We disagree with defendants' assertion that Ruth's testimony contradicts the Commission's determination in finding of fact number eleven. There was no indication from Ruth's direct job survey that plaintiff would be hired elsewhere in the area—the Ahoskie school system had not decided whether it had a position open for plaintiff. Although Ruth did testify that positions similar to plaintiff's quality inspector position existed at other manufacturing plants in the area, Ruth did not conclude that plaintiff would be hired in any of these positions given her injury. Similarly, the record contains no reports from Ruth reaching a conclusion as to whether plaintiff would be hired at the Ahoskie school system or by the other manufacturing plants in the area.

Defendants also assert that three of the Commission's conclusions of law are not supported by adequate findings of fact. Specifically, defendants argue that conclusions of law numbers two, three, and four are not supported by adequate findings of fact. We disagree.

In its opinion and award, the Commission made the following conclusions of law:

2. As a result of her compensable injury, plaintiff was disabled and was unable to earn wages of any kind from May 17, 1993 to April 10, 1994. She was paid temporary total disability during this period. Plaintiff returned to work as a Quality Control Inspector on April 10, 1994. Plaintiff's position was modified and can be characterized as "make work." Since plaintiff's job was make-work, defendants have not established that plaintiff was capable of obtaining a position suitable to her age, education, experience, and with her physical limitations due to her disability. *Bridges v. Linn-Corriher Corp.*, 90 N.C. App. 397, 368 S.E.2d 388, *disc. rev. den.*[,] 323 N.C. 171, 373 S.E.2d 104 (1988); *Peoples v. Cone Mills Corp.*, 316 N.C. App. 426, 342 S.E.2d 798 (1986).

3. Plaintiff was laid off from her "make work" position on November 22, 1996 and no other work has been made available. Defendants produced no evidence that there are other jobs available in the job market which plaintiff could obtain given her

restrictions. Plaintiff has presented evidence that she is totally disabled at this time and will require extensive retraining and assistance with job searches and job placement to return to gainful employment. *Radica v. Carolina Mills*, 113 N.C. App. 440, 439 S.E.2d 185 (1994).

4. Plaintiff is entitled to temporary total disability benefits at her compensation rate of $216.54 per week for the period of temporary disability between [the] date of her "lay-off" on [] November 22, 1996 [and] the date of the filing of this Opinion and Award (with credit for the Unemployment compensation arranged by the employer) pursuant to N.C. Gen. Stat. § 97-29 and henceforth until plaintiff returns to work or until further Order of the Commission.

Plaintiff received her total disability benefits pursuant to a duly approved Form 21 agreement. In such an instance, a presumption of total disability attaches in favor of the employee. *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 763, 487 S.E.2d 746, 749 (1997). "After the presumption attaches, 'the burden shifts to [the employer] to show that plaintiff is employable." *Id.* (quoting *Dalton v. Anvil Knitwear*, 119 N.C. App. 275, 285, 458 S.E.2d 251, 257, *disc. review and cert. denied*, 341 N.C. 647, 462 S.E.2d 507 (1995)). "However, the fact that an employee is capable of performing employment tendered by the employer is not, as a matter of law, an indication of plaintiff's ability to earn wages." *Saums*, 346 N.C. at 764, 487 S.E.2d at 750. The tendered employment must accurately reflect the employee's ability to compete with others in the job market in order for the employment to be indicative of an employee's earning capacity. *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 438, 342 S.E.2d 798, 806 (1986). Thus, "if other employers would not hire the employee with the employee's limitations at a comparable wage level. . . . [or] if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market," the job is "make work" and is not competitive. *Id.*

In the instant case, witnesses for defendants testified that plaintiff's position was no different from the other inspector positions in her shift, that plaintiff satisfactorily performed her job as a quality inspector, and that the inspector job was a competitive job in the local market. Defendants contend they thus rebutted the presumption of continuing disability in the instant case by establishing that plaintiff's job at Easco was not "make work" and that similar jobs suitable

for plaintiff were available in the local market. Defendants cite the "uncontested evidence" and testimony of their witnesses in support of this contention and request that this Court reverse the Commission's opinion and award. However, on appeal of a worker's compensation decision, this Court does not have the authority to weigh the evidence and decide an issue on the basis of its weight. *Walker v. Lake Rim Lawn & Garden*, 155 N.C. App. 709, 713, 575 S.E.2d 764, 767, *disc. review denied*, 357 N.C. 67, 579 S.E.2d 577 (2003). Instead, evidence tending to support the plaintiff's claim must be taken in the light most favorable to the plaintiff, and the plaintiff "is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *rehearing denied*, 350 N.C. 108, 532 S.E.2d 522 (1999).

Plaintiff produced evidence at trial tending to show that she could only perform some of the tasks of her position without assistance, that many of defendants' suggested jobs for plaintiff involved the use of both hands, that she was limited in her ability to use her injured hand, and that defendants' vocational consultant was unable to locate suitable employment for plaintiff. Dr. Downes testified that jobs involving finger dexterity or rapid movements were impossible for plaintiff to accomplish, and that, given her injuries, of the possible jobs for plaintiff proffered by defendants, only the Saw Helper job, a job Dr. Downes was unfamiliar with, appeared suitable for plaintiff. Considering this evidence in the light most favorable to the plaintiff, we conclude that defendants failed to sufficiently establish that plaintiff was not prohibited from gaining competitive employment because of her continuing disability. The Commission's findings of fact were supported by competent evidence, and its findings supported its conclusions of law. Thus, we hold the Commission did not err in making its conclusions of law. Therefore, defendants' second argument is overruled.

[3] Defendants next argue that the Commission erred in concluding that Easco willfully failed to comply with a statutory safety requirement. Defendants assert that the Commission's conclusion that plaintiff was entitled to a ten percent increase in compensation because of Easco's alleged violation of the safety requirement was unsupported by adequate findings of fact. We disagree.

N.C. Gen. Stat. § 97-12 (2003) states that "[w]hen the injury or death is caused by the willful failure of the employer to comply with

any statutory requirement or any lawful order of the Commission, compensation shall be increased ten percent[.] . . . The burden of proof shall be upon him who claims an exemption or forfeiture under this section." An act is considered willful "when there exists 'a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another,' a duty assumed by contract or imposed by law." *Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 383-84, 291 S.E.2d 897, 903 (1982) (quoting *Brewer v. Harris*, 279 N.C. 288, 297, 182 S.E.2d 345, 350 (1971)). The ten percent increase in compensation for willful OSHA violations is added to a successful plaintiff's total award.

In the instant case, the Commission concluded in pertinent part:

6. Plaintiff is entitled to a 10% penalty for unsafe conditions created by [Easco] pursuant to N.C. Gen. Stat. § 97-12 because of OSHA violations (29 C.F.R. §1910.212) for which [Easco] had prior knowledge and willfully chose not to comply with OSHA regulations. Plaintiff has met her burden of proof with regard to [Easco's] actions being willful.

In support of this conclusion, the Commission found:

15. If guards had been in place on the Press Brake machine upon which plaintiff operated, according to Ms. Ealey, it would have been impossible for finger injuries or amputations to occur. Following plaintiff's injury, guards were placed on the Press Brake machine.

16. [Easco's] Press Brake machines did not have guarding as defined by North Carolina's OSHA Manual. Moreover, the press brake machines did not prevent entry of hands and fingers into the point of operation. [Easco] willfully failed to come [into] compliance with OSHA standards, even though they had been informed by at least one employee of problems with the Press Brake machine.

17. According to Mr. Melvin Gurganus, also an employee of [Easco] many portions of the OSHA Manual were not being enforced or in place at the time of plaintiff's injury. Mr. Gurganus confirmed that a guard was put on the machine after plaintiff was injured. [Easco] no longer owns press brake machines of the sort upon which plaintiff was injured.

. . . .

29. [Easco] had knowledge through its employees such as Ms. Ealey that some Press Brake machines were inadequately guarded. Failure to bring the brake press machines back into compliance was an OSHA violation of [Easco] had knowledge of and willfully failed to come into compliance. CFR 1910.212 requires that guards should be applied *where possible*. It is the responsibility of management at [Easco] to maintain guards in a serviceable condition. The required standards were not met. [Easco] did install guards immediately after plaintiff's accident indicating that *it was possible* to install guards on the press brake machines, and therefore, should have been done. It was also the responsibility of [Easco's] supervisor to properly train plaintiff in using the machine with guards. Such training did not occur in violation of OSHA standards. See OSHA Publication 3067 (1992).

(emphasis in original).

Defendants contend that finding of fact number sixteen is not supported by competent evidence. However, testimony at the hearing from both plaintiff and plaintiff's co-workers firmly established that, on the date of plaintiff's injury, there were no guards on the brake press machine plaintiff was operating. Linda Ealey ("Ealey"), an employee of Easco who was working at the plant the day plaintiff was injured, testified that she was aware of three different occasions when a brake press machine had operated on its own, and that she had reported the machines as malfunctioning. She also testified that it would have been impossible for finger injuries or amputations to have occurred had a guard been in place on plaintiff's machine. We conclude this testimony was sufficient to support finding of fact sixteen.

Defendants also contend that the Commission erred in basing its conclusion on its finding that Easco applied guards to the brake press machines subsequent to plaintiff's injury. As defendant correctly notes, the sole fact that guards were applied to the machinery subsequent to plaintiff's injury is insufficient to support a conclusion that Easco willfully violated a safety statute. *See Ledford v. Lumber Co.*, 183 N.C. 614, 615, 112 S.E. 421, 422 (1922) ("In an action by an employee to recover for injuries alleged to have been received in consequence of defective machinery, used by his employer, the fact that after the injury the defendant substituted machinery of different material and adopted additional precautions in its use, is no evidence of negligence."). However, as reflected in finding of fact twenty-nine, the subsequent application of safety devices by Easco in the instant

case establishes that "*it was possible* to install guards on the press brake machines." (emphasis in original). Part 1910 of the Occupational Safety and Health Standards requires that "[o]ne or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation[.]" 29 C.F.R. § 1910.212(a)(1) (2003). The provision further requires that "[g]uards *shall be affixed* to the machine *where possible* and *secured elsewhere if* for any reason *attachment* to the machine *is not possible.*" 29 C.F.R. 1910.212(a)(2) (emphasis added).

In addition to the testimony concerning subsequent application of safety devices, the Commission considered the testimony from Ealey, who testified that she had informed Easco's management of several malfunctions in the brake press machines. Plaintiff testified that she received approximately ten minutes of training on how to safely operate the brake press machine. Melvin Gurganus ("Gurganus"), another employee of Easco, testified that many portions of the OSHA manual were not being enforced by Easco at the time of plaintiff's injury, including the requirements of Part 1910 of the Standards. Considering the evidence detailed above in the light most favorable to plaintiff, we conclude plaintiff offered competent evidence to support the Commission's conclusion that Easco willfully violated the safety statute.

Defendants further contend that plaintiff failed to offer sufficient evidence to establish that the absence of the guard was the cause of her injury. In support of this contention, defendants note that plaintiff testified at the hearing that she felt dizzy prior to her injury and could not recall exactly how she was injured, and that Billy Saulter ("Saulter"), plaintiff's vocational expert, testified that guards on a brake press machine could not prevent all injuries. However, as evidenced by the trial court's determination in finding of fact number fifteen, Ealey testified that "[i]f guards had been in place on the Press Brake machine upon which plaintiff operated . . . it would have been impossible for finger .injuries or amputations to occur." Ealey had been employed as a brake press machine operator by Easco for over two years at the time of plaintiff's injury. She continued to work as a brake press machine operator at Easco after plaintiff's injury and after guards were placed on the brake press machines. Thus, we conclude plaintiff offered sufficient evidence to allow the Commission to conclude that the absence of the guard was the proximate cause of plaintiff's injury. Defendants' final argument is therefore overruled.

**DAVIS v. DURHAM MENTAL HEALTH/DEV. DISABILITIES AREA AUTH.**

[165 N.C. App. 100 (2004)]

We have reviewed defendants' remaining assignments of error and find them to be without merit. Therefore, the decision of the Commission is affirmed.

Affirmed.

Judges HUNTER and GEER concur.