* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Phillips, and the briefs and oral argument before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated and that there is no question as to the misjoinder or nonjoinder of parties.
3. The parties stipulate and agree that they are bound by and subject to the North Carolina Workers' Compensation Act.
4. The parties stipulate that at all times relevant hereto, an employment relationship existed between plaintiff and defendant-employer.
5. Broadspire is the proper third-party administrator for this claim.
6. Plaintiff's average weekly wage is $917.28, which yields a compensation rate of $611.52.
7. Plaintiff had a compensable injury by accident on October 24, 2006, resulting in an injury to his left shoulder.
8. Defendant has paid plaintiff workers' compensation benefits in the amount of $550.38 per week.
9. The following evidence was received by the Deputy Commissioner as:
 a) Stipulated Exhibit #1: IC Forms, discovery responses, defendant's Motion To Compel, plaintiff's personnel file and defendant's code of conduct.
 b) Defendant's Exhibit #1: Photocopies of two photographs.
10. The issues before the Full Commission are whether defendant-employer should pay plaintiff an additional 10% of compensation and whether defendant-employer should be allowed to a reduction of 10% of plaintiff's workers' compensation benefits, pursuant to N.C. Gen. Stat. § 97-12.
 * * * * * * * * * * * *Page 3 
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff worked for defendant-employer for three years. For approximately two years, plaintiff worked on balers in the staple department and was certified to work on the balers. Plaintiff also worked for one year in the spindraw area.
2. When plaintiff was initially transferred to the old spindraw area, he received approximately three months of formal classroom training to learn how to operate the equipment and he was certified in lock-out/tag-out procedures. Plaintiff then worked approximately three months off and on in the new spindraw area on the K19 machines. The machines in the new spindraw area, including the K19 machines, were more automated than the machines in the old spindraw area.
3. On October 19, 2006, plaintiff attended a 30-minute energy control class regarding how to operate the K19 machine. Plaintiff also received on-the-job training from Eula Abrams on how to operate the K19 machines. On October 19, 2006, Ms. Abrams was tested on the lock-out/tag-out procedures and was certified in lock-out/tag-out procedures on the K19 machines. However, plaintiff was not tested and was not certified on lock-out/tag-out procedures on the K19 machines. Plaintiff requested additional training from his supervisor, Mable Dennis, because he did not feel safe operating the new machinery without formal training, but no additional training was provided. Plaintiff was aware that if he was not certified in lock-out/tag-out procedures on a particular machine, then he needed to get someone certified to perform the procedure before he worked on any machine. *Page 4 
4. On October 24, 2006, five days after his energy control class, plaintiff was working in the spindraw area and was trying to help Eula Abrams, who was working on the K19 machine and who was certified in lock-out/tag-out procedures on that machine. Plaintiff went over to assist Ms. Abrams, who was trying to remove a wrap-up on her machine. Ms. Abrams got a piece of cardboard to put under the K19 machine and plaintiff assumed Ms. Abrams had properly shut down the machine. As plaintiff testified, "I thought, you know, that she [Ms. Abrams] was trained to train me on it, and I figured it, you know, if she went up there, it was safe for me to go up under there." Plaintiff did not ask Ms. Abrams if the machine was properly locked-out/tagged-out before he slid underneath the machine. Ms. Abrams instructed plaintiff to crawl underneath the machine to get the wrap off. The machine was not properly locked out/tagged out. While plaintiff was underneath the machine, the machine rolled over on him and plaintiff was pinned to the floor. Plaintiff's left clavicle was fractured as a result of the incident.
5. Ms. Dennis, plaintiff's supervisor, testified that when she was assigned to supervise the new spindraw department, Ms. Abrams was already working as a certified employee in the department. Ms. Dennis confirmed that Ms. Abrams was training plaintiff to work on the new spindraw machines and that plaintiff was not enrolled in any formal classroom training on the new spindraw machines. Ms. Dennis stated that an employee in training should take guidance and instruction from certified, more experienced employees.
6. Joseph Lee, supervisor over the entire spindraw department, testified that he supervised over 400 employees and did not have any day-to-day interaction with plaintiff. Employees training in the new spindraw area took a formal four hour classroom training session after they completed three to four months of on-the-job training, but Mr. Lee explained that *Page 5 
plaintiff had not worked in the new spindraw area long enough to get to the formal classroom training.
7. Defendant performed an internal investigation and completed an OSHA Recordable Review of the October 24, 2006 incident, which found that plaintiff's "attempt to service the [K19 machine] without proper equipment isolation is a clear violation of our Energy isolation procedures and is also a direct violation of our area safety absolutes." Because of these major violations, the report recommended termination. In February of 2007, defendant-employer terminated both plaintiff and Ms. Abrams for safety violations associated with the October 24, 2006 incident. There is no evidence of record of an OSHA investigation or violations issued by OSHA as a result of plaintiff's accident.
8. Because of his injury by accident, plaintiff has been disabled from employment and has remained out of work. On November 8, 2006, defendant filed a Form 63 and paid plaintiff temporary total disability benefits at the rate of $424.58 per week. Pursuant to a Form 60 filed February 19, 2007, the parties stipulated that defendant has paid plaintiff weekly benefits at the rate of $550.38 per week, which was a 10% reduction in plaintiff's weekly benefit of $611.52 to account for the alleged violation of N.C. Gen. Stat. § 97-12.
9. The insurance adjuster assigned to this claim, Mae Ferguson, explained that it was her decision to reduce plaintiff's workers' compensation benefits by 10% pursuant to N.C. Gen. Stat. § 97-12 and that she relied upon the investigation notes and records to make her decision to reduce plaintiff's benefits. Although the evidence shows that plaintiff was aware that he should have asked Ms. Abrams whether the machine had been properly locked-out/tagged-out, the Commission finds that plaintiff's failure to do so does not rise to the level of a willful failure to perform a statutory duty. Plaintiff was trying to help Ms. Abrams, who was certified in lock- *Page 6 
out/tag-out procedures and was his trainer on operation of the K19 machine. There is no evidence in the record that defendant-employer's rules and regulations were approved by the Commission, as provided in N.C. Gen. Stat. § 97-12. Therefore, defendant failed to prove by the greater weight of the evidence that defendant is entitled to a 10% reduction in plaintiff's compensation pursuant to N.C. Gen. Stat. § 97-12.
10. The greater weight of the evidence also fails to show that defendant violated any OSHA regulations or deliberately failed to discharge a duty necessary to plaintiff's safety. Thus, the greater weight of the evidence is insufficient to establish that defendant was "willful" within the meaning of N.C. Gen. Stat. § 97-12. Therefore, plaintiff is not entitled to a 10% increase in the compensation pursuant to N.C. Gen. Stat. § 97-12.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 24, 2006, plaintiff suffered an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury by accident, plaintiff was disabled and is entitled to total disability compensation in the amount of $611.52 per week beginning October 24, 2006 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. N.C. Gen. Stat. § 97-12 provides for a 10% increase in compensation when the injury sustained by the employee is caused by the willful failure of the employer to comply with any statutory requirement or lawful order of the Commission. In Jenkins v. Easco Aluminum, *Page 7 165 N.C. App. 86, 97, 598 S.E.2d 252, 259 (2004) (citing Beck v.Carolina Power Light Co., 57 N.C. App. 373, 383-84, 291 S.E.2d 897,903 (1982)) the Court of Appeals defined "willful" as used in N.C. Gen. Stat. § 97-12 as, "when there exists a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, a duty assumed by contract or imposed by law." InJenkins, an employee was injured when a safety guard on a press break machine was left off, in violation of OSHA requirements. Evidence showed that defendant-employer had been informed by at least one other employee of the problems with the press brake machine. The Court of Appeals found this notice to the employer sufficient to satisfy the "willful" requirement of N.C. Gen. Stat.§ 97-12 and to award the 10% additional compensation. See also Brown v. Kroger Co., 169 N.C. App. 312,610 S.E.2d 447 (2005).
4. In the case at bar, defendant did not violate any OSHA regulations or deliberately fail to discharge a duty necessary to plaintiff's safety. Thus, defendant did not "willfully" fail to comply with a statutory requirement within the meaning of N.C. Gen. Stat. § 97-12. Therefore, plaintiff is not entitled to a 10% increase in the compensation awarded above. N.C. Gen. Stat. § 97-12; Jenkins v. EascoAluminum, supra.
5. In addition, plaintiff's injury was not caused by the willful failure of plaintiff to perform a statutory duty or by plaintiff's willful breach of any rule or regulation adopted by defendant and approved by the Commission and brought to the knowledge of plaintiff prior to the injury. N.C. Gen. Stat. § 97-12. There is no evidence that defendant-employer's rules and regulations were approved by the Commission, as provided in N.C. Gen. Stat. § 97-12. Therefore, on October 24, 2006, plaintiff did not willfully fail to perform any statutory duty or willfully breach any rule or regulation adopted by defendant-employer and approved by the *Page 8 
Commission. Thus, plaintiff's compensation shall not be reduced by 10%. N.C. Gen. Stat. § 97-12.
6. Plaintiff is entitled to payment by defendant of the difference between the compensation rate of $611.52 per week and the reduced rate of $550.38 paid by defendant since February 19, 2007.
7. Plaintiff is entitled to have defendant pay for all medical expenses for reasonable and necessary medical care provided or to be provided as the result of plaintiff's compensable injury by accident. N.C. Gen. Stats. §§ 97-25, 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee provided below, defendant shall pay plaintiff total disability benefits in the amount of $611.52 per week beginning October 24, 2006 and continuing until further Order of the Commission, subject to a credit or deficit for any amounts paid over or under plaintiff's correct compensation rate.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of his October 24, 2006 injury by accident that tend to effect a cure, give relief or lessen the period of plaintiff's disability.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel. *Page 9 
4. Defendant shall bear the costs.
This 17 day of July, 2008.
 S/_______________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/_______________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER *Page 1