ROBERT CAREY, Employee, Plaintiff v. NORMENT SECURITY INDUSTRIES, Employer, SELF-INSURED (GALLAGHER BASSETT SERVICES, Servicing Agent) Defendant

No. COA07-1188

(Filed 2 December 2008)

**1. Workers' Compensation— causation—cervical condition**

The full Industrial Commission did not err in a workers' compensation case by concluding plaintiff employee's cervical disc herniation was caused by his fall at work on 30 April 2004 because: (1) while there was medical testimony that hypothetically turning one's neck could cause herniation, there was testimony that to a reasonable degree of medical certainty plaintiff's fall caused his herniation; and (2) while the record provided evidence of another potential cause of plaintiff's cervical disc herniation, the Industrial Commission's findings of fact are conclusive on appeal when supported by competent evidence, even though there may be evidence that would support findings to the contrary.

**2. Workers' Compensation— temporary total disability—sufficiency of findings of fact**

The Industrial Commission erred in a workers' compensation case by concluding that plaintiff was temporarily totally disabled from any employment and was entitled to payment from 15 February 2005 until 8 July 2005, and the case is reversed and remanded for further findings of fact with regard to sporadic days plaintiff missed due to his medical treatment and status of plaintiff's disability between 23 May 2005 and 8 July 2005 because in the light most favorable to plaintiff, the record supported a finding of temporary total disability from 22 February through 23 May 2005, but did not support a finding that plaintiff was temporarily totally disabled between 23 May 2005 and 8 July 2005.

**3. Appeal and Error— preservation of issues—failure to raise issue at trial**

Although defendant contends it is entitled to a credit for short-term disability benefits paid to plaintiff in the event the Commission's award of temporary total disability benefits is upheld in a workers' compensation case, this argument is dismissed because defendant failed to raise it below as required by N.C. R. App. P. 10(b)(1).

**4. Workers' Compensation— appeal—attorney fees—costs**

The Court of Appeals exercised its discretion in a workers' compensation case and declined to award plaintiff employee costs and attorney fees for time spent on this appeal.

Judge WYNN concurring in part and dissenting in part.

Appeal by defendant from judgment entered 28 June 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 18 March 2008.

*Scudder & Hendrick, by April D. Sequin and Samuel A. Scudder, for plaintiff-appellee.*

*Hendrick, Gardner, Kinchelo & Garofalo, L.L.P., by Vachelle Willis and Dana C. Moody, for defendant-appellants.*

BRYANT, Judge.

Defendant Norment Security Industries appeals from an Opinion and Award entered 28 June 2007 by the Industrial Commission (the Commission) awarding Plaintiff Robert Carey temporary total disability compensation at the rate of $495.72 per week from 15 February 2005 until 8 July 2005 and for sporadic days plaintiff missed work due to medical treatment. For the reasons stated below, we reverse and remand the Opinion and Award.

*Facts*

During April 2004, plaintiff worked for defendant as a field engineer. On 30 April 2004, plaintiff was standing on a ladder approximately three feet above an acoustical tile ceiling installing magnetic locks when his ladder shifted and plaintiff fell. Plaintiff caught his arms on the ceiling grid, landed on his feet, and at the moment noted only bruised arms. But, a week later, plaintiff experienced severe mid back pain.

On 10 May 2004, plaintiff's Urgent Care physician referred him to Raleigh Orthopaedic Rehabilitation Specialist (Raleigh Orthopaedic) for evaluation and treatment of pain in the central and thoracic spine area. Plaintiff's initial evaluation at Raleigh Orthopaedic stated "[p]atient complains of interrupted sleep, very minimal pain during the day, pain is always central in location and thoracic spine levels. . . . It's worthy to note this patient also is complaining of some upper extremity numbness or tingling when questioned about the presence of this." Raleigh Orthopaedic treated plaintiff from 10 June 2004 until December 2004 when he was referred to the Carolina Back Institute. Throughout this time, plaintiff continued to work.

Plaintiff's initial evaluation at Carolina Back Institute by Dr. Catherine Duncan stated "[t]horacic and lumbar plain films and MRI studies had been done with continued complaints of, principally, mid to low thoracic pain which has been midline. [Plaintiff] has had, also, other areas of pain involving the neck, lower back, right leg and right foot that have been variously present . . . ." The impression made upon his treating physicians was that plaintiff suffered from some type of thoracic muscle tear.

Plaintiff underwent therapy at Carolina Back Institute from 5 January 2005 until 10 March 2005. After four sessions, Dr. Duncan declared plaintiff's "[t]horacic and lumbar strain/sprain, totally resolved . . . [and plaintiff] at maximal medical improvement with complete resolution of the above problem. [Plaintiff] has no restrictions for his thoracic or lumbar spine. He has no permanent partial impairment." Later, Dr. Duncan testified that there were indications noted on in-house forms that plaintiff suffered from neck pain. However, there was nothing from the insurance carrier that directed her towards "doing anything with the cervical spine."

On 19 February 2005, plaintiff experienced and later described to his medical case manager, Betty Riddle, what felt like a "pop" in his neck. During her deposition, Ms. Riddle testified as follows:

Riddle:  This was a telephone conference with him on 2/21/05, and I recall that he states that he was—he was just sitting there in his home when he just turned his head to speak to someone and felt a pop and that, you know, it had been bothering him since then.

After the "pop," plaintiff was seen by Rena Hodges at Knightdale Primary Care who, on 22 February 2005, excused plaintiff from work

CAREY v. NORMENT SEC. INDUS.

[194 N.C. App. 97 (2008)]

and referred him to Dr. Timothy Garner, a neurosurgeon at Capital Neurosurgery, Inc. Dr. Garner excused plaintiff from work for "neck problems" until further notice.

Dr. Garner diagnosed plaintiff as suffering from a soft cervical disc herniation at C6-7. In a letter to Rena Hodges, Dr. Garner indicated that he was aware of plaintiff's fall and plaintiff's bruises and scratches, aches and pains as a result of that fall. However, his impression was that plaintiff's trouble with his lower back was related to plaintiff's neck problems. Therapy sessions at Carolina Back Institute helped with plaintiff's lower back ailment but failed to alleviate off-and-on neck pain, numbness, and tingling down plaintiff's left arm, all of which occurred only after plaintiff's fall. Dr. Garner treated plaintiff for the cervical disc herniation and, on 23 May 2005, noted "[plaintiff's] doing great. He has no arm pain."

During his deposition, Dr. Garner testified that to a reasonable degree of medical certainty the fall was the likely cause of plaintiff's herniated disk at C6-7. However, on cross-examination, defense counsel presented Dr. Garner with Betty Riddle's report that on 19 February 2005 plaintiff experienced a "pop" in his neck.

Counsel: From that scenario . . . could that situation cause the herniation that you subsequently diagnosed?

Garner: Yes. Absolutely.

Counsel: Just for further clarification, would you say to a reasonable degree of medical certainty that the scenario that you just read into the record *could have* caused the disk herniation at C6-7 that you diagnosed [plaintiff] as having?

Garner: Yes. Could have.

Before Deputy Commissioner Philip A. Baddour, III, plaintiff testified that by 23 May 2005 he had minimal arm pain and that Dr. Garner released him to return to work. Plaintiff further testified that he "[didn't] recall [Dr. Garner] indicating one way or the other whether [plaintiff] ha[d] any restrictions or not."

After receiving his medical release to return to work, Plaintiff first informed his attorney of his status.

I wasn't completely back to normal but I was ready to go back to work because I couldn't afford to keep staying out, and [my attor-

ney] instructed me to wait until I heard from him, and then we went through mediation, and then they told me that I needed to go back to work. And, therefore, that day when I got out of mediation, I called Norment to find out if I could come back to work, and they told me the position was no longer available.

In the interim, plaintiff made "about three or four hundred bucks" doing "odd-and-end stuff here and there" for Carolina Auto Sales. When plaintiff contacted defendant on 24 June 2005, thirty-two days after receiving his medical release, defendant informed plaintiff that his job was no longer available. Two or three weeks later, plaintiff accepted a position at Carolina Wiring Service setting up home automation and installing security, surround sound, phone systems, cable, and networking. And, as of October 2005, plaintiff accepted employment with Southern Security Group doing "the same line of work as Norment . . . the same type of stuff."

On 11 March 2005, plaintiff filed with the Industrial Commission a Form 33—Request that claim be assigned for hearing—alleging that "Defendant[] [has] not paid proper compensation." Defendant filed a Form 33R—Response to request that claim be assigned for hearing— alleging that "Employee-Plaintiff has received all benefits he is entitled to under the North Carolina Workers' Compensation Act; Employee-Plaintiff's cervical spine/neck problems are not related to this compensable injury . . . ." The case was heard on 26 October 2005 before Deputy Commissioner Baddour.

Deputy Commissioner Baddour filed an Opinion and Award 12 April 2006 which denied plaintiff's claim for workers' compensation benefits related to his cervical disc herniation. On 27 April 2006, plaintiff filed a Form 44—Application for review—to appeal to the Full Commission.

The matter was reviewed by Commissioners Laura Mavretic, Buck Lattimore, and Diane Sellers, on 18 January 2007. After reviewing the prior Opinion and Award, the briefs, and the arguments made before Deputy Commissioner Baddour, the Commission reversed the prior Opinion and Award with a split decision.

The Commission majority concluded that "[o]n April 30, 2004, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As the result of the compensable injury by accident, plaintiff sustained injuries to his cervical,

thoracic and lumbar spine." The Commission awarded plaintiff temporary total disability compensation "from February 15, 2005 until July 8, 2005 and for the sporadic days plaintiff missed due to his medical treatment."

Commissioner Lattimore dissented stating plaintiff had not "met his burden of demonstrating that his cervical disc herniation resulted from his compensable workplace injury."

Defendant appeals.

On appeal, defendant raises three issues by asserting that: (I) the Commission erred by concluding plaintiff's cervical condition was caused by his fall at work on 30 April 2004; (II) assuming plaintiff's cervical condition was compensable, plaintiff was not entitled to disability benefits; and (III) assuming the Full Commission's award of temporary total disability benefits is upheld, defendant is entitled to a credit for short-term disability benefits paid to plaintiff. Additionally, plaintiff requests that this Court award plaintiff attorney's fees.

*I*

[1] Defendant first argues the Full Commission erred by concluding plaintiff's cervical condition was caused by his fall on 30 April 2004 where competent medical testimony fails to support such a finding and conclusion. Specifically, defendant asserts that Dr. Garner's diagnosis that plaintiff's fall caused his cervical condition was based on an incomplete medical history which failed to include the occurrence of a "pop" in plaintiff's neck on 19 February 2005. We disagree.

"Under our Workers' Compensation Act, the Commission is the fact finding body. The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (citations and quotations omitted).

[T]he findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary. The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence.

*Id.* at 681, 509 S.E.2d at 414 (citation and quotations omitted). But, "[i]n cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Holley v. ACTS, Inc.,* 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003).

In *Holley,* our Supreme Court reversed the Opinion and Award of the Commission where an expert testified that though a causal relationship between the employee's accident and her current medical condition was possible he could not say to a reasonable degree of medical probability that such a relationship existed. *Id.* at 233-34, 581 S.E.2d at 753-54. The Court reasoned that "[a]lthough medical certainty is not required, an expert's speculation is insufficient to establish causation." *Id.* at 234, 581 S.E.2d at 754 (citation omitted). Ultimately, the Court held "that the medical evidence as to causation in [that] case was insufficient to support the Industrial Commission's findings of fact and conclusions of law." *Id.*

In *Holley,* the doctor could not opine to any degree of medical certainty as to the causation of the plaintiff's condition, especially where the plaintiff's age and medical history suggested other causes. *Id.* at 233-34, 581 S.E.2d at 753-54. However, in the instant case, while there was medical testimony that hypothetically turning one's neck could cause herniation, there was clear testimony that to a reasonable degree of medical certainty plaintiff's fall caused his herniation.

During his deposition and on direct examination, Dr. Garner testified as follows:

Attorney: Based on your 20 years of experience, based on looking at the MRI films, based on your examination and treatment of [plaintiff], do you have an opinion to a reasonable degree of medical certainty or medical probability that the fall described to you by [plaintiff], and then redescribed to you today, was the likely cause of his herniated disk at C6-7?

. . .

Garner: Yes

Attorney: And what is your opinion?

Garner: Yes, it was.

After reviewing the prior Opinion and Award issued by the Deputy Commissioner and the briefs and arguments made to the Commission, the Commission made the following pertinent finding:

> Based on Dr. Garner's 20 years of experience, the MRI findings, and his examination and treatment of plaintiff, it was Dr. Garner's expert opinion to a reasonable degree of medical certainty and the Commission finds that the fall from the ladder was a likely cause of plaintiff's herniated disc at C6-7.

While the record provides evidence of another potential cause of plaintiff's cervical disc herniation, "the findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (citation and quotations omitted). Therefore, we hold the evidence was sufficient to support the Commission's finding and conclusion that plaintiff's 30 April 2004 fall caused his cervical disc herniation. Accordingly, defendant's assignment of error is overruled.

## II

**[2]** Defendant next argues that even assuming plaintiff's cervical condition was compensable, plaintiff was not entitled to disability benefits. We agree in part.

"The standard of review on appeal to this Court of a workers' compensation case is whether there is any competent evidence in the record to support the Commission's findings of fact, and whether these findings support the conclusions of the Commission." *Russell v. Lowe's Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citation omitted).

> The Commission may not wholly disregard competent evidence; however, as the sole judge of witness credibility and the weight to be given to witness testimony, the Commission may believe all or a part or none of any witness's testimony. The Commission is not required to accept the testimony of a witness, even if the testimony is uncontradicted. Nor is the Commission required to offer reasons for its credibility determinations.

*Hassell v. Onslow County Bd. of Educ.*, 362 N.C. 299, 306-07, 661 S.E.2d 709, 715 (2008) (citations and quotations omitted).

Under the North Carolina Workers' Compensation Act (the Act), codified under Chapter 97 of our General Statutes, "[t]he term 'dis-

ability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2007). Thus, under the Act, disability is the "impairment of the injured employee's earning capacity rather than physical disablement." *Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457 (citation omitted). "The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment." *Id.* (citation omitted).

"Under N.C. Gen. Stat. §§ 97-29 and 97-30, an injured employee who suffers a loss of wage-earning capacity is generally entitled to collect compensation for as long as he or she remains disabled." *Collins v. Speedway Motor Sports Corp.*, 165 N.C. App. 113, 119, 598 S.E.2d 185, 190 (2004). "An employer may rebut the continuing presumption of total disability either by showing the employee's capacity to earn the same wages as before the injury or by showing the employee's capacity to earn lesser wages than before the injury." *Brown v. S & N Commc'ns, Inc.*, 124 N.C. App. 320, 330, 477 S.E.2d 197, 202 (1996) (citation omitted).

> If the employer offers sufficient evidence to rebut the continuing presumption of disability, the process is not concluded. The burden then switches back to the employee to offer evidence in support of a continuing disability or evidence to prove a permanent partial disability under G.S. 97-30. The employee can prove a continuing total disability by showing either that no jobs are available, no suitable jobs are available, or that he has unsuccessfully sought employment with the employer. If the employee meets this burden, he is entitled to continuing total disability benefits.
>
> If the employee fails to meet this burden, he continues to be disabled but the disability changes from a total disability to a partial disability under N.C.G.S. 97-30.

*Id.* at 331, 477 S.E.2d at 203 (internal citations omitted).

Here, the parties stipulated that "[p]laintiff has an average weekly wage of $743.54, and a resulting compensation rate of $495.72." The record indicates that on 22 February 2005 Rena Hodges of Knightdale Primary Care issued a medical excuse note for plaintiff's absence from work due to concerns over plaintiff's cervical condition. On 7 March 2005, Dr. Garner issued a note stating that plaintiff

was under his care for a "neck problem" and was to be excused from work until further notice.

On 23 May 2005, Dr. Garner recorded his last visit with plaintiff. Plaintiff testified that by 23 May 2005 he had minimal arm pain and Dr. Garner released him to return to work. Plaintiff further testified that he "[didn't] recall [Dr. Garner] indicating one way or the other whether [plaintiff] ha[d] any restrictions or not." However, plaintiff testified that he first contacted defendant about coming back to work 24 June 2005.

Defendant presented evidence that on 23 May 2005, when plaintiff received his release to return to work authorization from Dr. Garner, plaintiff's position at Norment Security was open and available to him; however, by 24 June 2005, that position was unavailable.

After learning defendant no longer had a position available, plaintiff accepted a permanent position at Carolina Wiring Service. And, at the time he testified before Deputy Commissioner Baddour, plaintiff worked for Southern Security Group doing "the same line of work as Norment . . . the same type of stuff."

The Commission made the following finding:

> 19. As the result of the admittedly compensable injury by accident on April 30, 2004, plaintiff sustained injuries to his cervical, thoracic and lumbar spine and was temporarily totally disabled from any employment from February 15, 2005 until July 8, 2005.

"The Commission may not wholly disregard competent evidence . . . ." *Hassell*, 362 N.C. at 306, 661 S.E.2d at 715 (citations and quotations omitted). On these facts, we hold the Commission erred in finding "plaintiff . . . was temporarily totally disabled from any employment from February 15, 2005 until July 8, 2005." In the light most favorable to plaintiff, the record supports a finding of temporary total disability from 22 February through 23 May 2005, but does not support a finding that plaintiff was temporarily totally disabled between 23 May 2005 and 8 July 2005. Accordingly, we reverse the Commission's conclusion that "plaintiff was temporarily totally disabled from any employment and is entitled to payment by defendant of temporary total disability compensation . . . from February 15, 2005 until July 8, 2005." Additionally, the Commission failed to make findings of fact as to what sporadic dates plaintiff was out of work due to medical treatment prior to 15 February 2005. Therefore, we

CAREY v. NORMENT SEC. INDUS.

[194 N.C. App. 97 (2008)]

reverse the Commission's award and remand the matter for further findings of fact with regard to "sporadic days plaintiff missed due to his medical treatment" and the status of plaintiff's disability between 23 May 2005 and 8 July 2005.

## III

[3] Defendant last argues that in the event the Commission's award of temporary total disability benefits is upheld, defendant is entitled to a credit for short-term disability benefits paid to plaintiff.

However, while defendant assigns error to the Commission's temporary total disability award, there is no indication in the record that the issue of credit for short-term disability benefits paid to plaintiff was presented to the Commission; thus, defendant raises this issue for the first time here on appeal. Under our North Carolina Rules of Appellate Procedure, Rule 10(b)(1), "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(b)(1) (2008). Defendant's failure to raise the issue below resulted in a waiver of the issue. Accordingly, defendant's argument is dismissed.

[4] Last, plaintiff argues he should be awarded his costs and attorney's fees for the time spent on the appeal. In our discretion, we decline to do so. *See* N.C. Gen. Stat. § 97-88 (2007).

Reversed and remanded.

Judge JACKSON concurs.

Judge WYNN concurs in part and dissents in part.

WYNN, Judge, concurring in part and dissenting in part.

I disagree with that part of the majority's decision that remands this matter because "the Commission failed to make findings of fact as to what sporadic dates plaintiff was out of work due to medical treatment prior to 15 February 2005." In my view, the Commission's Opinion and Award contains adequate findings of fact regarding the days the plaintiff missed because of medical treatment.

The Commission's Opinion and Award contains the following relevant findings of fact:

5. Plaintiff was initially treated on May 10, 2004 . . .

6. On June 10, 2004, Plaintiff began treating with Dr. Cara Siegel . . .

10. On October 28, 2004 an MRI of plaintiff's lumbar spine showed a disc bulge and herniation. On December 14, 2004, plaintiff was treated by Dr. James Fulghum . . .

11. On December 17, 2004, plaintiff was seen by Dr. Duncan with primary complaints of thoracic and low back pain. Plaintiff underwent a series of prolotherapy injections that were administered on January 5, January 19, February 2, and February 16, 2005.

Furthermore, the Commission ordered the parties "to confer and stipulate based upon the payroll and medical records as to the days or partial days for which plaintiff is due compensation." These findings of fact in the Commission's Opinion are sufficient to determine what sporadic dates plaintiff was out of work due to medical treatment prior to 15 February 2005. Accordingly, I respectfully dissent from the portion of the majority's opinion that orders a remand.