An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1016
NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014


JESSE L. BOSTIAN,
          Employee,
          Plaintiff,

    v.                                    North Carolina
                                          Industrial Commission
MARTIN MARIETTA,                          I.C. No. 657096
          Employer,
SPECIALTY RISK SERVICES,
          Carrier,
          Defendants.


     Appeal by plaintiff and defendants from opinion and award

entered 28 June 2013 by the North Carolina Industrial

Commission.  Heard in the Court of Appeals 22 January 2014.


     *Wallace and Graham, P.A., by Edward L. Pauley, for
     plaintiff.*

     *Teague Campbell Dennis & Gorham, LLP, by George H. Pender
     and Brian M. Love, for defendants.*


     GEER, Judge.


     Both plaintiff Jesse L. Bostian and defendants Martin

Marietta and Specialty Risk Services appeal from an opinion and

award of the Industrial Commission awarding plaintiff temporary

partial disability benefits for silicosis.  On appeal,

defendants challenge the Commission's conclusion -- despite plaintiff's employment having been terminated for reasons unrelated to his occupational disease -- that plaintiff's current employment status is due to his job-related occupational disease and that he is entitled to temporary partial disability compensation. However, we hold that the Commission's findings of fact on this issue are supported by competent evidence and are, therefore, binding on appeal. Because defendants do not contest that the findings of fact support the conclusion of law, we affirm.

With respect to plaintiff's appeal, plaintiff primarily argues that defendants unreasonably defended plaintiff's claim by denying and defending plaintiff's claim for five years before admitting the claim, entitling plaintiff to attorneys' fees and costs pursuant to N.C. Gen. Stat. § 97-88.1 (2013). We hold that the Commission's findings of fact fail to show that the Commission considered all of plaintiff's evidence relating to his claim of unreasonable defense and fail to resolve conflicts in the evidence regarding that issue. We, therefore, reverse the Commission's denial of plaintiff's request for attorneys' fees and remand for reconsideration.

## Facts

At the time of the hearing before the deputy commissioner, plaintiff was 42 years old. Plaintiff completed high school, but has not had any additional vocational training. He was employed from 1990 until 2006 by defendant employer Martin Marietta, a company that engages in mining operations across North Carolina.

Plaintiff first worked as a truck driver for defendant employer. He then worked briefly as a crane operator before being promoted to drill operator, where he operated a large drilling apparatus that drilled holes into granite to enable quarry employees to blast. All of these positions exposed plaintiff to pulverized granite dust.

In 1994, plaintiff was promoted to a lead person position at defendant employer's Denver rock quarry and became responsible for maintaining the plant area. In 1997, he was transferred to the Kannapolis quarry in the same position. Both of these positions required him to be in a dusty environment throughout the day.

In 1999, Dr. Gary Bullard, a pulmonologist, diagnosed plaintiff with pneumoconiosis, a lung condition caused by the inhalation of mineral dust. He advised plaintiff to avoid situations in which he would be exposed to dust and encouraged him to take precautionary measures at work, such as wearing

protective masks. Plaintiff continued to work for defendant employer after his diagnosis, and defendant employer provided plaintiff with dust masks to wear while working in dusty areas. Dr. Bullard treated plaintiff until 2006.

In 2000, plaintiff was promoted to a salaried position as a foreman at the Kannapolis quarry. Between 2000 and 2004, he worked as a foreman at the Mallard Creek and Charlotte quarries. In June 2004, plaintiff was involved in a serious safety violation, resulting in a two-day suspension, demotion to an hourly truck driver position, and then a transfer from the Charlotte quarry to the Denver quarry to operate yard and pit loaders.

From July 2004 until December 2006, plaintiff operated a yard and pit loader at the Denver and Kannapolis quarries. Pit loaders are heavy equipment vehicles which are operated while sitting in an enclosed air-conditioned cab. However, when the air-conditioning did not work, or the loader did not have air conditioning, plaintiff opened the windows of the cab, which exposed him to rock dust.

After his demotion, plaintiff began having work performance and attitude problems. From 2004 until 2006, plaintiff's job performance was unsatisfactory due to issues with following management guidance and conflicts with his co-employees.

Because of plaintiff's poor job performance, he was transferred from the Denver quarry to the Kannapolis quarry in January 2006. However, at the Kannapolis quarry he continued to have problems including being late for work, low quarry productivity, and quality control issues with customers. As a result, his hourly rate of pay was reduced by $4.00 in August 2006.

On 7 September 2006, plaintiff filed a Form 18B claiming he was suffering from an occupational disease. Defendant employer filed a Form 61 on 3 November 2006 denying the claim on the grounds that it had incomplete information. Plaintiff was terminated due to his poor work performance in December 2006. After plaintiff filed a Form 33 request for hearing on 9 May 2011, defendants, on 23 May 2011, filed a Form 60 admitting plaintiff's right to compensation.

On 25 January 2012, the matter was heard by Deputy Commissioner J. Brad Donovan. Given defendants' admission of the compensability of plaintiff's occupational disease, the issues litigated at the hearing were limited to plaintiff's entitlement to disability benefits, including temporary total disability benefits; disability benefits under N.C. Gen. Stat. § 97-61.5 for removal from a dusty trade; and the assessment of a 10% penalty under N.C. Gen. Stat. § 97-12. The deputy commissioner filed an opinion and award determining that

plaintiff was entitled to temporary partial disability compensation, attorneys' fees, medical expenses, and costs.

All parties appealed to the Full Commission. In an opinion and award filed 28 June 2013, the Commission affirmed the deputy commissioner's opinion and award with minor modifications. The Commission concluded that plaintiff had contracted silicosis, an occupational disease, as a result of his employment with defendant employer. The Commission further concluded that "the greater weight of the evidence shows that Plaintiff's termination from employment constituted [a] constructive refusal to accept suitable employment[.]"

Nevertheless, the Commission concluded that "it is also evident that because of the effect on his health, Plaintiff should not have been working for Defendant-Employer, or any other mining business in any capacity, for some period of time prior to his termination." The Commission, therefore, determined "as a matter of law that Plaintiff's current employment status is due to the job-related occupational disease which prevents him from obtaining employment in the only field he has worked in most of his adult life, and not to the unrelated misconduct which resulted in his termination."

Based on this conclusion, the Commission further concluded that "the decrease in Plaintiff's wages is due in part to his

inability to continue working in the field where he has established his greatest amount of experience." The Commission then determined that plaintiff was entitled to temporary partial disability compensation.

However, because, according to the Commission, plaintiff had caused his removal from the trade that led to his silicosis, he was not eligible for removal from the dusty trade pursuant to N.C. Gen. Stat. § 97-61.5 or to any compensation under that statute. The Commission also concluded that defendants did not unreasonably defend the action or willfully fail to comply with any statutory requirement or any lawful order of the Commission, within the meaning of N.C. Gen. Stat. § 97-12. Both plaintiff and defendants timely appealed to this Court.

## Discussion

"The scope of this Court's review of an Industrial Commission decision is limited 'to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law.'" *Wooten v. Newcon Transp., Inc.*, 178 N.C. App. 698, 701, 632 S.E.2d 525, 528 (2006) (quoting *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000)). Findings of fact made by the Commission "are conclusive on appeal if supported by competent evidence,

notwithstanding evidence that might support a contrary finding." *Hobbs v. Clean Control Corp.*, 154 N.C. App. 433, 435, 571 S.E.2d 860, 862 (2002). "The Commission's conclusions of law are subject to *de novo* review." *Id.*

<u>Defendants' Appeal</u>

Defendants challenge the Commission's award of temporary partial disability benefits under N.C. Gen. Stat. § 97-30 (2009). Defendants first assert that the 2009 version of N.C. Gen. Stat. § 97-30, which is applicable to plaintiff's claim, only allows the payment of temporary partial disability benefits for a period of 300 weeks from the date of injury, which they assert is the date of diagnosis. Defendants contend that since plaintiff was first diagnosed with silicosis in 1999, any award of temporary partial disability benefits would fall outside the 300-week period.

Because defendants did not raise this specific argument before the Industrial Commission, they may not properly argue it for the first time on appeal. *See Carey v. Norment Sec. Indus.*, 194 N.C. App. 97, 107, 669 S.E.2d 1, 7 (2008) (holding defendant's failure to argue to Commission whether defendant was entitled to credit for short-term disability benefits already paid to plaintiff resulted in waiver of the issue).

Although defendants contend that the issue was preserved because they argued generally that plaintiff was not entitled to temporary partial disability benefits, it is well established that the precise theory argued on appeal in challenging a decision must have been presented to the trial tribunal. *See, e.g., Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 211 N.C. App. 343, 348, 712 S.E.2d 328, 332 (2011) ("'Our Supreme Court has long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts.'" (quoting *State v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002)). Because defendants failed to present this argument to the Commission, we do not address it.

Defendants next contend that the Commission erroneously concluded that plaintiff was eligible for continuing temporary partial disability benefits under the test established in *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 397 (1996), for determining whether an injured employee has the right to continuing workers' compensation benefits after being terminated for misconduct. Our Supreme Court has explained:

> [U]nder the *Seagraves'* test, to bar payment
> of benefits, an employer must demonstrate

> initially that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury.

*McRae v. Toastmaster, Inc.*, 358 N.C. 488, 493, 597 S.E.2d 695, 699 (2004).

"An employer's successful demonstration of such evidence is 'deemed to constitute a constructive refusal' by the employee to perform suitable work, a circumstance that would bar benefits for lost earnings, '*unless* the employee is then able to show that his or her inability to find or hold other employment . . . at a wage comparable to that earned prior to the injury[] is due to the work-related disability.'" *Id.* at 493-94, 597 S.E.2d at 699 (quoting *Seagraves*, 123 N.C. App. at 234, 472 S.E.2d at 401). Thus, an employee is "entitled to benefits if he or she can demonstrate that work-related injuries, and not the circumstances of the employee's termination, prevented the employee from either performing alternative duties or finding comparable employment opportunities." *Id.* at 494, 597 S.E.2d at 699.

Here, the Commission found -- and plaintiff does not contest -- that the initial three requirements under *Seagraves* were satisfied and the termination of plaintiff's employment constituted a constructive refusal to accept suitable

employment. However, based upon its finding that plaintiff "should not have been working for Defendant-Employer, or any other mining business in any capacity, for some period of time prior to his termination," the Commission concluded that "Plaintiff's current employment status is due to his job-related occupational disease which prevents him from obtaining employment in the only field he has worked in most of his adult life, and not to the unrelated misconduct which resulted in his termination."

Defendants argue only that the record does not contain competent evidence to support the Commission's determination that "Plaintiff's current employment status is due to his job-related occupational disease which prevents him from obtaining employment in the only field he has worked in most of his adult life, and not to the unrelated misconduct which resulted in his termination." Specifically, defendants challenge the Commission's finding that "given the zero tolerance to dust recommended by Dr. Bullard, there were no jobs offered by Defendant-Employer that Plaintiff could perform in which there was not some exposure to dust and so constituted a significant hazard to his long-term health."

Defendants note that Dr. Bullard only restricted plaintiff's exposure to dust from drilling granite and

pulverized granite dust (because it produces silicon dust), but did not restrict plaintiff's exposure to dust from inert rocks or pit gravel. Defendant contends that Dr. Bullard's zero tolerance recommendation applied to the harmful silicon dust and not gravel dust and that because plaintiff's exposure to pulverized granite dust ended in 1994 when he stopped working as a drill operator, he was no longer exposed to any harmful dust. Defendants assert that this distinction in types of dust explains why Dr. Bullard never recommended that plaintiff stop working for defendant employer. We disagree.

Defendants do not specifically challenge the Commission's findings regarding (1) Dr. Bullard's testimony that "'any exposure is too much exposure when it comes to mineral dusts in an individual who already has pneumoconiosis'" and (2) Dr. Douglas Kelling's recommendation that plaintiff "avoid any environment in which he would potentially be exposed to dusty environments" and that "even dust levels below the permissible exposure limit (PEL) could be potentially injurious to Plaintiff." Because these unchallenged findings of fact are binding on appeal, the Commission's finding that plaintiff should not have been employed in any position with defendant employer may be supported by any competent evidence showing *any* risk, however slight, of exposure to harmful dust.

There is ample evidence in the record that plaintiff's employment exposed him to harmful dust even after he stopped working as drilling operator. Plaintiff, Bobby Martin (another employee), and Bobby Rucker (the quarry manager) all testified that plaintiff was exposed to dust in all of his positions while employed with defendant employer. Additionally, Dr. Bullard's own testimony regarding gravel dust does not conclusively establish that gravel dust is not harmful. Dr. Bullard testified that he "[doesn't] know the characteristics of working with pit gravel" and that his testimony that gravel does not typically produce silicon dust is based on his "assumption" that gravel is inert. Nevertheless, Dr. Bullard testified that harmful silicon dust may be generated by simply manipulating gravel if the gravel "had been commingled with drilled rock and there was dust within the gravel related to previous drilling or rock crushing."

We conclude that there is competent evidence to support the Commission's finding that defendant "should not have been working for Defendant-Employer, or any other mining business in any capacity, for some period of time prior to his termination." Defendants' argument regarding the health risks posed by plaintiff's field of employment merely amount to a request that we re-weigh the evidence. *See White v. Weyerhaeuser Co.*, 167

N.C. App. 658, 673, 606 S.E.2d 389, 400 (2005) (this Court may not consider "argument that the Commission should have weighed and viewed the evidence differently").  This finding, in turn, supports the Commission's conclusion that plaintiff's current employment status is due to his job-related occupational disease and that he is entitled to temporary partial disability compensation.  Accordingly, we affirm the Commission's award of temporary partial disability compensation.

## Plaintiff's Appeal

Plaintiff first contends that the Commission erred in concluding that "defendants did not unreasonably defend this claim" under N.C. Gen. Stat. § 97-88.1.  We agree.  Pursuant to N.C. Gen. Stat. § 97-88.1:

> If the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them.

In *Chaisson v. Simpson*, 195 N.C. App. 463, 484, 673 S.E.2d 149, 164 (2009) (internal citations and quotation marks omitted), this Court explained:

> The determination of [w]hether the defendant had a reasonable ground to bring a hearing is reviewable by this Court *de novo*. The reviewing court must look to the evidence introduced at the hearing in order

> to determine whether a hearing has been defended without reasonable ground. The test is not whether the defense prevails, but whether it is based in reason rather than in stubborn, unfounded litigiousness. If it is determined that a party lacked reasonable grounds to bring or defend a hearing before the Commission, then the decision of whether to make an award pursuant to N.C.G.S. § 97-88.1, and the amount of the award, is in the discretion of the Commission, and its award or denial of an award will not be disturbed absent an abuse of discretion.

"'[T]he burden [is] on the defendant to place in the record evidence to support its position that it acted on reasonable grounds.'" *Blalock v. Se. Material*, 209 N.C. App. 228, 232, 703 S.E.2d 896, 899 (2011) (quoting *Shah v. Howard Johnson*, 140 N.C. App. 58, 64, 535 S.E.2d 577, 581 (2000)).

In this case, plaintiff contends that defendants acted unreasonably by failing to promptly investigate plaintiff's claim in violation of Rule 601 of the Rules of the Industrial Commission, unreasonably denying the claim, and not admitting the compensability of the claim until plaintiff filed a Form 33 request for a hearing, five years after the claim was filed. Defendants, on the other hand, argue that defendants' initial denial of the claim is irrelevant to the issue whether defendants unreasonably defended the hearing because prior to the hearing, defendants filed a Form 60 admitting the compensability of the claim.

Defendants point out that plaintiff has not made any argument that defendant employer's defense of the issues actually tried at the hearing was unreasonable. Defendants argue that because the plain language of the statute requires the Commission to determine whether a *hearing* has been defended unreasonably, the Commission should only consider a defendant's defense of plaintiff's claim at the actual hearing.

Neither party cites any authority in support of their position. We too have not found any case law specifically addressing whether attorneys' fees may be awarded for an unreasonable denial of a claim under N.C. Gen. Stat. § 97-88.1 where the defendant, prior to the hearing, admits the claim. However, we do not believe that the case law supports defendants' narrow interpretation of the provision. Rather, our review reveals that this Court has adopted a liberal interpretation of what conduct constitutes an unreasonable defense under N.C. Gen. Stat. § 97-88.1.

For example, in *Allen v. SouthAg Mfg.*, 167 N.C. App. 331, 605 S.E.2d 209 (2004), this Court held that the Commission did not abuse its discretion in awarding attorneys' fees under N.C. Gen. Stat. § 97-88.1 when the award was supported by a finding that:

> "Defendants failed to properly investigate plaintiff's claim, denied his claim without

> reasonable grounds, and continued to deny and defend his claim after the evidence established compensability. Defendants also failed to comply with known statutes and Rules of the Industrial Commission regarding the reporting, payment, and filing of documents related to the acceptance or denial of benefits for injuries occurring to plaintiff in his workplace. Defendants' actions in this case constitute stubborn, unfounded litigiousness."

167 N.C. App. at 335, 605 S.E.2d at 212. Thus, the award for an unreasonable defense of a hearing in *Allen* was based upon the defendants' conduct during the proceedings from the time the claim was filed through the initial hearing.

In *Bradley v. Mission St. Joseph's Health Sys.*, 180 N.C. App. 592, 593-94, 638 S.E.2d 254, 255-56 (2006), the plaintiff, a nurse, filed a worker's compensation claim for injuries she sustained when a patient assaulted her at work. The employer, due to its "lack of information" regarding the claim, filed a Form 61 denying the claim, and, two weeks later, filed a Form 63, commencing payment without prejudice. *Id.* at 599, 638 S.E.2d at 259. The Commission found that the defendant's denial of the plaintiff's claim was with "'justification and due cause'" and denied the plaintiff's motion for attorneys' fees under N.C. Gen. Stat. § 97-88.1. *Bradley*, 180 N.C. App. at 600, 638 S.E.2d at 260.

On appeal, this Court reversed and held that the Commission's finding that the denial of the claim was reasonable was not supported by the evidence because the defendant "had no evidence at the time of the denial that [the plaintiff's] injuries were anything other than work-related." *Id.* This Court concluded that the defendant's "filings of the Form 61 and Form 63 were thus unreasonable, as they constituted . . . 'stubborn, unfounded litigiousness'" and held that the plaintiff "should be entitled to additional attorney's fees for that portion of time her attorney spent responding to Forms 61 and 63 . . . ." *Id.* (quoting *Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 54, 464 S.E.2d 481, 485 (1995)).

Here, as in *Bradley*, defendants filed a Form 61 denying plaintiff's claim based on incomplete information. The form stated:

> To date the medical records are incomplete as provided by the Plaintiff and as such the Defendants are not in a position to ascertain whether or not the Plaintiff developed the alleged conditions as set forth in his Industrial Commission filings. To date no evidence exists that the Plaintiff was ever exposed to the alleged materials at a level which would equate to an injurious exposure and claims to the contrary are denied.

In addition, like the defendant in *Allen*, the Commission's undisputed findings establish that defendants continued to deny and defend the claim after evidence established compensability.

The Commission found that in May 1999, Dr. Bullard diagnosed plaintiff with pneumoconiosis, a form of silicosis, and concluded that plaintiff's granite drilling was "'the likely etiology.'" Further, the Commission found that on 8 October 2010, an independent physician hired by defendants, Dr. Kelling, conducted a medical examination of plaintiff and again diagnosed plaintiff with pneumoconiosis caused by working with defendant employer. Nevertheless, defendants did not file a Form 60 admitting liability for plaintiff's claim until 19 May 2011, five years after plaintiff had initially filed his claim, even though defendants knew 12 years earlier that plaintiff had contracted silicosis due to his granite drilling, a diagnosis confirmed six months prior to defendants filing their Form 60.

These findings, under *Allen* and *Bradley*, would support a determination that defendants unreasonably defended a hearing. Nonetheless, subsequent to *Allen* and *Bradley*, the General Assembly amended N.C. Gen. Stat. § 97-18(c) (2013) to read: "If the employer or insurer, in good faith, is without sufficient information to admit the employee's right to compensation, the employer or insurer may deny the employee's right to

compensation." The Court in *Bradley* noted that this provision means that denial or defense of a claim on the grounds of lack of information "will likely be considered *per se* reasonable." 180 N.C. App. at 599 n.5, 638 S.E.2d at 260 n.5.

Although N.C. Gen. Stat. § 97-18(c) may provide some protection to defendants in this case, plaintiff has presented evidence that raises a question of fact as to whether defendants acted in good faith in denying the claim based on lack of information. Specifically, Dr. Bullard diagnosed plaintiff with silicosis in 1999, and defendant employer paid for plaintiff's medical treatment associated with his silicosis until he was terminated in 2006. Further, in February 2000, defendant employer filed an accident report with the Mining Safety and Health Administration stating that plaintiff had developed the occupational disease of silicosis. This evidence contradicts defendants' contention in Form 60 that it lacked sufficient information to allow the claim.

Plaintiff also raised the issue of defendants' compliance with Rule 601 of Rules of the Industrial Commission, which requires an employer to promptly investigate injuries of an employee and respond to a claim within 90 days. If an employer violates Rule 601, the Commission may order sanctions. Defendants argue that plaintiff failed to seek sanctions under

Rule 601 and that Rule 601 is entirely unrelated to N.C. Gen. Stat. § 97-88.1. However, the Commission in *Allen* considered defendant's violation of Industrial Commission Rules as evidence supporting defendant's unreasonable defense of a claim. 167 N.C. App. at 335, 605 S.E.2d at 212 (award of attorneys' fees supported by finding of defendant's failure to comply with "'Rules of the Industrial Commission regarding the reporting, payment, and filing of documents related to the acceptance or denial of benefits for injuries occurring to plaintiff in his workplace'"). We, therefore, hold rules violations may be considered as evidence tending to show a defendant's unreasonableness.

Despite plaintiffs' having presented evidence that the defendants acted unreasonably in denying plaintiff's claim, the Commission made a single finding rejecting plaintiff's request for attorneys' fees:

> Based upon a preponderance of the evidence of record, the Full Commission finds that insufficient evidence exists to determine that Defendants have defended this claim unreasonably.

Based on this finding, the Commission concluded that "[d]efendants did not unreasonably defend this claim."

This single finding is not sufficient to demonstrate that the Commission complied with its duty to "consider and evaluate

all of the evidence" before it. *Lineback v. Wake Cnty. Bd. of Comm'rs*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997). "Although the Commission may choose not to believe the evidence after considering it, it may not wholly disregard or ignore competent evidence." *Id.* Where the Commission's opinion and award fails to indicate that it considered testimony "relevant to the exact point in controversy," it "must be vacated, and the proceeding 'remanded to the Commission to consider all the evidence, make definitive findings and proper conclusions therefrom, and enter the appropriate order.'" *Jenkins v. Easco Aluminum Corp.*, 142 N.C. App. 71, 78, 79, 541 S.E.2d 510, 515 (2001) (quoting *Lineback*, 126 N.C. App. at 683, 486 S.E.2d at 255).

Here, plaintiff introduced evidence that defendants' denial of plaintiff's claim was not in good faith and instead was the result of stubborn, unfounded litigiousness. The Commission's findings indicate that the Commission failed to resolve conflicts in the evidence regarding defendants' good faith in denying plaintiff's claim and impermissibly disregarded competent evidence that defendants continued to deny plaintiff's claim and defend the claim after receiving evidence that the claim was compensable. We, therefore, reverse and remand for

reconsideration, based on the entire record, of plaintiff's claim pursuant to N.C. Gen. Stat. § 97-88.1.

Plaintiff next argues that the Commission erred in denying compensation pursuant to N.C. Gen. Stat. § 97-12 (2013), which provides: "When the injury or death is caused by the willful failure of the employer to comply with any statutory requirement or any lawful order of the Commission, compensation shall be increased ten percent (10%). . . . The burden of proof shall be upon him who claims an exemption or forfeiture under this section."

Plaintiff contends that he submitted sufficient evidence that defendant employer violated the general duty clause of the North Carolina Occupational Safety and Health Act, N.C. Gen. Stat. § 95-129(1) (2013), which provides:

> Each employer shall furnish to each of his employees conditions of employment and a place of employment free from recognized hazards that are causing or are likely to cause death or serious injury or serious physical harm to his employees[.]

Plaintiff also contends that defendant employer violated the parallel provision in the Federal OSHA, 29 U.S.C. § 654 (2012), providing:

> (a) Each employer—
>
> (1) shall furnish to each of his employees employment and a place of employment which are free from

> recognized hazards that are causing or are likely to cause death or serious physical harm to his employees[.]

Defendants have argued in response that these two statutes are preempted by the Mining Safety and Health Act and are, therefore, inapplicable. Because we conclude that, in any event, plaintiff failed to meet his burden of proving that defendants violated either the State or Federal OSHA regulations, we do not address defendant's preemption argument.

Under N.C. Gen. Stat. § 97-12, "[a]n act is considered willful 'when there exists a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, a duty assumed by contract or imposed by law.'" *Jenkins v. Easco Aluminum*, 165 N.C. App. 86, 97, 598 S.E.2d 252, 259 (2004) (quoting *Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 383-84, 291 S.E.2d 897, 903, *aff'd per curiam*, 307 N.C. 267, 297 S.E.2d 397 (1982)).

In construing N.C. Gen. Stat. § 95-129(1), this Court has looked to federal cases interpreting 29 U.S.C. § 654, and has explained:

> A "recognized hazard" has been defined as one about which the employer knew or one known about within the industry. This definition has been conditioned upon a recognition that not all hazardous conditions can be prevented and that Congress, by the absolute terms of the "general duty clause," did not intend to

impose strict liability upon employers. Only preventable hazards must be eliminated. Thus, a hazard is "recognized" only when the [Commissioner] demonstrates that feasible measures can be taken to reduce materially the likelihood of death or serious physical harm resulting to employees.

*Brooks v. Rebarco, Inc.*, 91 N.C. App. 459, 464, 372 S.E.2d 342, 345 (1988) (internal citations and quotation marks omitted).

In determining whether an employer has violated N.C. Gen. Stat. § 95-129(1), this Court has employed a "reasonable man" standard: whether, under the circumstances, a reasonably prudent employer would have recognized a hazardous condition and taken steps to protect its employees against the hazard, and, if so, whether the precautions taken were reasonable. *See Brooks*, 91 N.C. App. at 465, 372 S.E.2d at 345.

The Commission made the following pertinent findings of fact regarding the precautions taken by defendant to address the dusty conditions of its work environment:

28. Defendants underwent both mandatory annual testing by the federal agency Mine Safety and Health Administration (MSHA), and additional, voluntary site testing for dust and silica exposure by SOMA to ensure that Defendant employer was providing a safe environment. Testing has not found dust levels significant to mandate the use of dust masks or other breathing systems. Although there was no mandate by Defendant employer to wear them, dusk [sic] masks and respirators were available to employees.

29. Mr. Ertel testified at his deposition that as part of their testing, SOMA obtains samples from individual employees to test dust levels. In 2002, 2005, and 2006, Plaintiff was tested by SOMA. The results in 2002 showed that Plaintiff's test results with regard to dust levels were within the permissible exposure limits. The results in 2005 and 2006 showed that there were no detectable levels of dust.

30. Based upon a preponderance of the evidence of record, the Full Commission finds that insufficient evidence exists to determine that Defendants willfully failed to comply with any statutory requirement of any lawful order of the Commission.

Plaintiff does not challenge these findings of fact. These findings show that defendant employer recognized that dust posed a potential hazard to its employees' safety, made efforts to periodically monitor the hazard to ensure that it did not present a significant health hazard for its employees, and provided precautionary protections, such as dust masks, to protect against the hazard. Even assuming that that these findings are insufficient to show that defendants acted reasonably with respect to plaintiff individually, thus constituting a violation of OSHA, plaintiff has failed to point to evidence in the record that any violation was willful. We, therefore, affirm the Commission's conclusion that plaintiff is not entitled to sanctions pursuant to N.C. Gen. Stat. § 97-12.

## Conclusion

We affirm the Commission's award of temporary partial disability benefits and the Commission's refusal to impose sanctions under N.C. Gen. Stat. § 97-12. We reverse the Commission's denial of plaintiff's request for attorneys' fees pursuant to N.C. Gen. Stat. § 97-88.1 and remand for reconsideration.

Affirmed in part, reversed in part, and remanded in part.

Judges BRYANT and CALABRIA concur.

Report per Rule 30(e).